Beverly J. Olive SIMPSON, Appellant,

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

No. 17571.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 17, 1975.

Rehearing Denied Feb. 28, 1975.

Mullinax, Wells, Mauzy & Baab, Inc., Dallas, and McGuire, Levy & Collins and John E. Collins, Irving, for appellant.

Tom R. Coffield, Jr., and Strasburger, Price, Kelton, Martin & Unis and Royal H. Brin, Jr., Dallas, for appellee.

## OPINION

MASSEY, Chief Justice.

On or about April 15, 1970 David Eugene Olive died as result of injuries sustained during the course of his employment. His injuries, allegedly, were the result of negligent tort chargeable to a third person. The circumstances of his fatal accident gave rise to a claim for compensation against Texas Employers' Insurance Association as the Workmen's Compensation insurance company liable therefor by the widow of the deceased, Beverly J. Olive (now Simpson), and his minor son David Wayne Olive.

By settlement there was disposition of the insurance claim by payments made by the Texas Employers' Insurance Association.

Thereafter Beverly J. Olive, individually and as next-friend for her son David Wayne Olive, brought suit at common law to establish liability and damages against the third person.

Promptly thereafter, by its attorney Fred Leach, Texas Employers' filed its Petition in Intervention presenting claim for its entitlement to $22,310.24 as the subrogated amount under the Texas Workmen's Compensation Act, plus expenses and reasonable costs of enforcing its claim, all contingent upon plaintiffs' success in effecting recovery by judgment or settlement of the basic tort suit.

Understandable, and according to the practice of all attorneys in such type of case, discussion ensued between the attorneys for plaintiffs and for Texas Employers. An objective was to accomplish for the former the maintaining of complete control of the plaintiffs' case, that it might be tried without the jury's knowledge and consideration that any part of the recovery which might be effected would be the entitlement of an insurance company; and an objective for the latter was assurance of

security of the amount to which it was subrogated without necessity of additional expense and time in trial and to escape necessity of establishing by evidence the exact amount of its subrogation rights, elimination of any possible issue upon amounts, etc. Ordinarily both sides profit from an accomplishment of their objectives.

Early in 1973 these two attorneys reduced to writing an instrument upon which they had agreed, in which they stipulated that $22,310.24 was the correct amount to which Texas Employers' was subrogated. Continuing, by the same writing, they furthermore stipulated "in the event Plaintiff does recover of the Defendants (the third-party tort feasor) any sum of money in the captioned cause, then in that event, Texas Employers' Insurance Association, by reason of its intervention herein, shall be entitled to judgment in the amount of $22,310.-24 out of the first monies so recovered by the Plaintiff. Texas Employers' Insurance Association hereby waives any and all attorney's fees against the said Plaintiffs provided that it is not necessary for Texas Employers' Insurance Association to actively participate in the trial of the above styled and numbered cause."

September 10, 1973 the plaintiffs' suit against the third person was called for trial. A jury was selected on that day. By the time on the following day for the introduction of evidence, plaintiffs' attorneys had agreed upon a settlement of the third-party suit. It might be well to mention that by September 10, 1973 the trial court had appointed an *ad litem* guardian and attorney to represent the interest of David Wayne Olive, for whom Beverly J. Olive (now become Mrs. Simpson) had initially brought suit as next friend.

Of all the foregoing, save the accomplishment of the agreement to settle, on September 11, 1973, the attorney for Texas Employers' was antecedently informed. Additionally, on September 10, 1973 there was interchange of telephone conversations between the attorneys, primarily to determine the percentage of discount of the subrogated interest of Texas Employers' might be obtained in order to promote a possible settlement with the third-party defendant. During the course of at least one such conversation the insurance company attorney was informed that he should come to the courthouse "and represent the Association's interest, which I declined to do because of the stipulation in the file." Such attorney was also advised "that the Judge had read the amendments to the Compensation law which had an effective date of September 1, 1973 and had said that he thought that they were procedural and that he would honor a motion for attorneys' fees." The attorney's position thereon was that he had a stipulation in the file that provided for full recoupment, and furthermore precluded his attendance upon trial. The insurance company never contracted to discount its subrogated amount.

Thereafter in the trial court where the common law damage suit pended the settlement was agreed upon, and a judgment was approved and entered by the court incorporating a provision that $22,310.24 out of the settlement paid (which Texas Employers claimed by subrogation), be deposited in the registry of the court pending disposition of the dispute arisen. Dispute concerning propriety of the payment of the entire $22,310.24 to the insurance company had come to the court's attention by motion filed in behalf of these who were—or had been—the plaintiffs' attorneys for an allowance therefrom of some amount as an attorneys' fee. By their motion these attorneys claimed entitlement to be paid a fee for their active representation of Texas Employers' interest as necessarily incident to representation of their clients' suit. Of this they predicated such right and entitlement upon the amendment which became effective September 1, 1973 of Vernon's Ann.Tex.Civ.St. Art. 8307, Sec. 6a, "Recovery from third person; subrogation; compromise." (In Pocket Parts as "Recovery from third person; subrogation; attorney's fees.")

Subsequently a hearing was held upon the issues made by the motion aforestated, with the parties adversary actually those who had been the attorneys for Beverly J. Olive Simpson and her son David Wayne Olive as opposed to Texas Employers' Insurance Association. After a lengthy hearing the court rendered a judgment order which denied any attorney's fee out of the subrogated amount of $22,310.24, and awarded such amount, then pending as a fund in the registry of the court pursuant to previous order, to Texas Employers' Insurance Association. Therefrom the attorneys appealed. It is they who are hereafter termed appellants.

We affirm.

Appellants apparently concede that under Art. 8307, Sec. 6a antecedent to September 1, 1973 (date amendment thereof was effective) they would not have right to the attorney's fee out of Texas Employers' subrogated amount, but insist that the court should treat the amendment as one which was remedial and procedural rather than substantive so that—according to them—they would by the amendment be thereto entitled.

Added by the amendment effective September 1, 1973 was provision, as follows: ". . . when the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee (attorney's fee) to the claimant's attorney . . . out of the association's part of the recovery. . . ."

In relation to their contention appellants point to a different portion of the Workmen's Compensation Act which was amended, to-wit: Art. 8309, Sec. 3b "Effect of amendments on existing right, remedies, etc." The article provides "No inchoate, vested, matured, existing or other rights, remedies, powers, duties or authority, either of any employe or legal beneficiary, or of the board, or of the association, or of any other person shall be in any way affected by any of the amendments

herein made to the original law hereby amended, but all such rights, remedies, powers, duties, and authority shall remain and be in force as under the original law just as if the amendments hereby adopted had never been made, and to that end it is hereby declared that said original law is not repealed, but the same is, and shall remain in full force and effect as to all such rights, remedies, powers, duties and authority; and further this law in so far as it adopts the law of which it is an amendment is a continuation thereof, and only in other respects a new enactment. *The maximum weekly benefit and the total amount payable in effect upon the date of injury shall remain the applicable maximum weekly benefit and total amount payable for the injury or death regardless of the increase of any benefits that shall take effect at any later date.*" (Emphasis is our own and is to designate language of the amendment of the article provided to become effective September 1, 1973.)

Reasoning from the part of the article copied in full above, that effective September 1, 1973, the appellants claim that the amendment's language indicates clearly that it was the intent of the Legislature to limit pending litigation only with respect to the amount of weekly benefits payable. They submit that if the Legislature had so intended, it could easily have provided that the old law also apply to existing cases as far as the attorney's fee is concerned; that even more easily, the Legislature could have provided that the date of injury be the date controlling for all purposes.

Reasoning further appellants claim that neither the old Art. 8309, Sec. 3b nor the 1973 amendment make mention of procedural changes of law; that by plain language they concern only rights, remedies, powers, duties or authorities, all matters of substantive law. It follows, so they say, that Art. 8307, Sec. 6a deals with substantive law as applied to the matter of attorney's fee for which the compensation carrier is made liable in connection with enforcement of subrogation rights, particu-

larly since such carrier is offered three choices, viz: (1) it may agree with the claimant's attorney upon a fee; (2) it may obtain an attorney to *actively* represent its interest; or (3) in the absence of the above ". . . the association shall pay such fee to the claimant's attorney . . . .", with this option effected by the law which appellants insist must be substantive from its very nature, and one become in force and effect and controlling of the liability for the payment of the attorney's fee out of any recovery of its subrogation entitlement.

█ We reject appellants' contention and overrule each of their points of error because the amendment to Art. 8307, Sec. 6a, (1) being prospective only, was without application to the occurrences within the period September 1, 1973 to September 11, 1973 when the third-party case, inclusive of Texas Employers' subrogation interest, went to trial and was settled during the course of trial; (2) the right to attorney's fee claimed, being substantive and not merely procedural, the amendment effective September 1, 1973 could not constitutionally be retroactive as applied thereto; and (3) by contractual stipulation, binding at least upon Beverly J. Olive Simpson and attorneys representing her interest, Texas Employers' entitlement by subrogation was in the stated amount of $22,310.24, and such sum was not as great as the portion of the recovery by her in the common law suit for damages, and therefore sufficient to return to Texas Employers' the entire amount to which it was subrogated. (The judgment award to Beverly J. Olive Simpson, in her individual capacity, was for $68,189.76.)

█ Contrary to appellants' contentions we find authority for our holding in Art. 8309, Sec. 3b. Texas Employers' subrogation interest, in its total amount, was—as of the time of the settlement of the suit at common law, and long prior thereto—inchoate, vested, and substantive. Texas Employers' Insurance Association v. Vineyard, 340 S.W.2d 106 (Dallas Civ.App., 1960, writ ref., n. r. e.); Texas Employers' Insurance Association v. Brantley, 394 S.W.2d 824 (El Paso Civ.App., 1965; reversed, but on other grounds at 402 S.W.2d 140); Southern Surety Co. v. Lucero, 218 S.W. 68 (El Paso Civ.App., 1920, writ dism.); Texas Employers' Ins. Ass'n v. Bryan, 198 S.W. 342 (San Antonio Civ. App., 1917, error refused); Georgia Casualty Co. v. Ward, 259 S.W. 1103 (Dallas Civ.App., 1924, error refused); Patton v. New Amsterdam Casualty Co., 36 S.W.2d 1000 (Tex.Comm.App., 1931).

█ The Legislature must indicate, at least by fair implication, that a statute will be retroactive for it to be such, even with respect to procedural matters. Petroleum Casualty Company v. Canales, 499 S.W.2d 734 (Houston Civ.App., 1st Dist., 1973, writ ref., n. r. e.); State v. Humble Oil & Refining Co., 141 Tex. 40, 169 S.W.2d 707 (1943); Wilson v. Work, 122 Tex. 545, 62 S.W.2d 490 (1933).

Further, the contract and stipulation would have application and entitle Texas Employers to the amount of $22,310.24 whether the amendment effective September 1, 1973 might have any controlling effect otherwise. In other words the parties (and we have noticed that we are uncomplicated by the fact that a minor became entitled to the portion of the common law damages recovered) had so stipulated that the insurance company would have had its subrogated amount protected even had the execution of the stipulation occurred after September 1, 1973. Though immaterial to our disposition we observe that were this not so the parties should be deemed to have contracted and stipulated under the law existent at the time of the stipulation, as applied to which enactment of subsequent laws would ordinarily (and certainly as applied to the instant situation) be inoperative to impair contractual rights theretofore entered upon.

Judgment is affirmed.

SPURLOCK, J., not participating.