**William Paul PESCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 49975, 49976.**

Court of Criminal Appeals of Texas.

June 11, 1975.

Rehearing Denied July 9, 1975.

Marvin G. Kramer, Dallas, for appellant.

Henry Wade, Dist. Atty. and John H. Hagler, Jay Ethington and Robert Whaley, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

These are appeals from convictions for murder with malice. The court assessed the punishment in each case at life. The date of the alleged offense was August 18, 1973. The trial was after the effective date of the new code.

Appellant contends that the court erred in its instruction on insanity and that error was committed in argument.

Appellant, after an argument with his father concerning his (appellant's) drinking, killed his father and then his mother in their mobile home by stabbing them with knives. The next day he was arrested at the scene. The day following his arrest he voluntarily confessed. His defense was insanity.

He contends that the trial court erred in refusing to charge the jury on insanity as it is defined in V.T.C.A., Penal Code, Section 8.01, effective January 1, 1974. It provides:

"(a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

"(b) The term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

The trial court charged the jury concerning the defense of insanity on the "right and wrong" test, under the McNaughton Rule, in effect at the time of the commission of the offense. He notes that it could be possible for a finding of insanity under the 1974 code and not under the former code. He does not show how this could have been done under the evidence in this cause.

The Savings Provisions, Section 6, Acts 1973, 63rd Legislature, Chapter 399, are:

"(a) Except as provided in Subsections (b) and (c) of this section, this Act applies only to offenses committed on or after its effective date, and a criminal action for an offense committed before this Act's effective date is governed by the law existing before the effective date, which law is continued in effect for this purpose, as if this Act were not in force. For purposes of this section, an offense is committed on or after the effective date of this Act if any element of the offense occurs on or after the effective date.

"(b) Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that was an offense under the laws repealed by this Act and that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act. However, a conviction existing on the effective date of this Act for conduct constituting an offense under laws repealed by this Act is valid and unaffected by this Act. For purposes of this section, 'conviction' means a finding of guilt in a court of competent jurisdic-

tion, and it is of no consequence that the conviction is not final.

"(c) In a criminal action pending on or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins."

An examination of the savings provisions shows the basic rule is that criminal actions are governed by the law existing at the time of the commission of the act. Where the act was committed prior to the effective date of the code but where the trial was held subsequent to that date there are two exceptions to that rule. One, conduct which was an offense under the old code and is no longer an offense may not be prosecuted after the effective date and the action is dismissed. Two, the defendant may elect, if adjudged guilty of the offense as defined by the old code, to be punished under the new code.

■ A newly enacted statute, when it becomes effective, is presumed to be prospective unless it is expressly made retrospective under Article 5429b–2, Section 3.01, Vernon's Ann.Civ.St., which is made applicable to the new Penal Code through V.T.C.A., Penal Code, Section 1.05(b). The savings provisions make the code retrospective only in two specific instances, mentioned above, and neither apply in this case.

■ Here, the conduct constituting the offense was appellant's killing his mother and father. Insanity is a defense that excuses a defendant from punishment because of his state of mind at the time of the commission of the act. Article 34, V.A.P.C. (1925), states: "No act done in a state of insanity can be punished as an offense." See 16 Tex.Jur.2d, Criminal Law, Section 91, et seq. It does not mean that the conduct (if the accused is sane) does not constitute an offense. Appellant's conduct would still constitute the offense of murder under the new code.

We overrule appellant's contention that the offense is not complete until the sanity of a defendant is determined. Section 8.01, supra, has as an element of the affirmative defense of insanity that the mental condition must be present at the time of the conduct charged. Insanity as a defense has always required this element. See Hogan v. State, 496 S.W.2d 594 (Tex.Cr.App.1973), cert. denied, 414 U.S. 862, 94 S.Ct. 81, 38 L.Ed.2d 112, and 16 Tex.Jur.2d, supra. The determination at trial that a defendant was insane at the time of the commission of the crime is just that—a determination of his mental state at the time the act was committed.

We hold that the trial court did not err in submitting the issue of insanity under the rule as it existed at the time of the commission of the offense.

■ Appellant also contends that the trial court erred in refusing to charge the jury concerning the law of conditional release in Article 46.02, Section 2(d)(3), Vernon's Ann. C.C.P., which, in part, provides:

"If there be no jury finding on the issue of present insanity, then the court, if the discharge or going at large of defendant be considered by the court manifestly dangerous to the peace and safety of the people, shall order defendant committed . . . ."

The proceedings began on February 4, 1974, with the empaneling of a jury to hear the issue of competency to stand trial or sanity at the time of trial. On February 5, 1974, a jury found him "sane." In that proceeding, the court charged the jury that if they found the appellant presently insane they were to determine whether hospitalization was required.

Trial on the merits began February 6, 1974. The verdict of guilty was returned

on February 11, 1974. Since the jury had already found that he was sane at the time of the trial, the provision of Article 46.02, supra, by its terms, did not apply. The requested charge was properly refused by the trial court.

 Finally, appellant contends that the prosecutor in his closing argument injected facts not in evidence and that such argument was prejudicial.

Mr. Whaley, Assistant District Attorney, stated: "Mr. Kramer said we never brought all of the bottles. We never brought all of the medicine bottles. We never brought all the whiskey bottles—." Mr. Kramer, appellant's counsel, objected that the mention of other liquor bottles was completely outside the evidence. It was overruled. Mr. Whaley then stated:

"I understood the Deputy Sheriff when he testified in answer to the question from Mr. Ethington say that he hadn't brought all the evidence he found in that trailer. Now, if you remember it differently, by all means, you be guided by your remembrance of it. I don't have any corner on the brain market. I don't remember everything exactly right, but I recall him saying he did not bring all the evidence, and we know he didn't bring any of the pills, pill bottles, . . ."

Appellant contends that, since insanity was his defense and it was important that he show the killing was not the result of intoxication but of insanity, the mention of several whiskey bottles at the scene prejudiced his case.

A deputy sheriff who investigated the scene and gathered the evidence testified concerning that evidence as the State introduced each item. One such item was referred to as an empty vodka bottle. Defense counsel in his argument stated:

". . . And you heard one officer say, there was other evidence that the State didn't want to bring up here.

There was other evidence in the case, and you don't see that."

Appellant's sister testified that when she discovered the bodies her brother was in the trailer asleep and appeared to be intoxicated.

The prosecutor's argument was based upon a reasonable deduction from the evidence and was invited. No new and harmful fact was injected into the case. No reversible error is shown. See Jones v. State, 520 S.W.2d 755 (Tex.Cr.App.1975).

The judgments are affirmed.