Ex parte Eddie James JOHNSON.

No. 69480.

Court of Criminal Appeals of Texas, En Banc.

Oct. 9, 1985.

Eddie James Johnson, pro se.

John B. Holmes, Jr., Dist. Atty. and Karrie Key, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post-conviction writ of habeas corpus brought pursuant to Art. 11.07, V.A.C.C.P. Applicant complains that his convictions for two aggravated robberies are void and requests a new trial.

The record shows that applicant was indicted in Cause No. 314983, in the 262nd District Court of Harris County, for an aggravated robbery committed on February 29, 1980. The indictment also contained an enhancement paragraph alleging that applicant had been previously convicted of felony armed robbery in Coahoma County, Mississippi. A second indictment was returned against applicant in Cause No. 314984, also in the 262nd District Court, which charged applicant with another aggravated robbery committed on April 22, 1980. The second indictment also contained an enhancement paragraph alleging the prior Mississippi felony conviction.

The judgment for Cause No. 314983 indicates that the jury found applicant guilty of aggravated robbery, and reflects that the State abandoned the enhancement paragraph. The jury assessed punishment at

50 years confinement in the Texas Department of Corrections, and a fine of $5,000.00.

The judgment for Cause No. 314983 indicates that the jury found applicant guilty of aggravated robbery, and reflects that the State abandoned the enhancement paragraph. The jury assessed punishment at 50 years confinement in the Texas Department of Corrections, and a fine of $5,000.00.

The judgment for Cause No. 314984 indicates the jury found applicant guilty of the second aggravated robbery, and further found true the enhancement allegation. Punishment was assessed at 50 years confinement in the Texas Department of Corrections, and a fine of $10,000.00.

Applicant contends that the jury's assessment of total fines in the amount of $15,000.00 in addition to terms of years as punishment is unauthorized by law and therefore the verdicts are void and any subsequent judgments and sentences based thereon are void.

In *Bogany v. State*, 661 S.W.2d 957 (Tex. Cr.App.1983), the defendant was convicted of aggravated robbery. On a finding of one prior conviction for enhancement, punishment was assessed by the jury at 60 years and a $10,000.00 fine. We held that V.T.C.A. Penal Code, § 12.42(c), which provides the penalties for repeat and habitual felony offenders convicted of first degree felonies, did not authorize a fine in addition to enhancement of punishment. See also *Releford v. State*, 683 S.W.2d 385 (Tex.Cr. App.1984); *Diaz v. State*, 663 S.W.2d 114 (Tex.App.—Houston [1st] 1983). Since the verdict was unauthorized by law, the court of appeals was without authority to reform the verdict. We remanded the case for a new trial.

■ Applying *Bogany* to the instant case, the $10,000.00 fine assessed in Cause No. 314984 was not authorized by law. Since the enhancement paragraph was abandoned in Cause No. 314983, the $5000.00 fine assessed was permissible under V.T.C.A. Penal Code, § 12.32. We now turn to the proper remedy needed to correct the improper verdict in Cause No. 314984.

In prior cases, when a jury returned a verdict unauthorized by law, the judgment was rendered void. in *Ex parte McIver*, 586 S.W.2d 851 (Tex.Cr.App.1979), the jury found the defendant guilty of felony possession of marihuana. The jury verdict stated:

"[We] assess his punishment at 5 years confinement in the Texas Department of Corrections and hereby further assess a fine in the amount of 5.000 [sic] Dollars and we, the jury, do hereby recommend that such fine be probated for a period of 10 years."

The district judge signed an instrument which stated in part:

"It is, therefore, Considered and Adjudged by the Jury that the defendant ... be punished by confinement ... for a term of not more than five (5) years nor less than two (2) years, and a fine in the amount of $5,000.00 with recommendation the fine be probated."

We found that Art. 42.12, V.A.C.C.P., did not authorize the jury to assess punishment of confinement *without* a recommendation of probation and also a fine *with* a recommendation of probation. *McIver*, supra at 854. We held that since the verdict assessed punishment unauthorized by law, it was void at its inception, citing *Smith v. State*, 479 S.W.2d 680 (Tex.Cr.App.1972).

In *Smith*, the defendant was convicted for possession of dangerous drugs. The jury found the defendant guilty and assessed punishment at one year in jail followed by a twelve month probation period. The trial court struck the portion of the jury's verdict stating "followed by a twelve month probation period." We held that the verdict was void at its inception since the law did not authorize punishment of jail time followed by probation, and further held that the trial court did not have the authority to change the verdict by deleting the offending portion. *Id.* at 681.

Last, in *Spaulding v. State*, 687 S.W.2d 741 (Tex.Cr.App.1985), the defendant was

convicted for aggravated sexual abuse. The jury assessed a $10,000.00 fine in addition to a term of years as punishment. We found that the verdict was unauthorized by law and therefore void, citing *Bogany*, supra. We further held that the Governor was without authority to remit or commute that portion of the sentence assessing the fine since the judgment was void at its inception. *Spaulding*, at 743.

The preceding cases all share a common premise and conclusion. The premise in each case is that the jury rendered a verdict that was unauthorized by law, *viz:* the punishment assessed was not within the universe of punishments applicable to the offense. The common conclusion reached was that the judgment based upon such a verdict was void.

The logic connecting the premise and conclusion involves the lack of a specific vehicle by which the improper verdict could be reformed. A court was permitted only to reform the judgment in a given case so that it properly reflected the true verdict reached by the jury. See *Releford*, supra at 387, citing *Milczanowski v. State*, 645 S.W.2d 445 (Tex.Cr.App.1983); *Chudleigh v. State*, 540 S.W.2d 314 (Tex.Cr.App.1976); *Anderson v. State*, 504 S.W.2d 507 (Tex.Cr. App.1974); *Castaneda v. State*, 491 S.W.2d 885 (Tex.Cr.App.1973); *Batiste v. State*, 464 S.W.2d 149 (Tex.Cr.App.1971); and *Cedargreen v. State*, 432 S.W.2d 524 (Tex.Cr. App.1968). Thus, when a jury rendered a verdict unauthorized by law, the only course of action available was to remand the case for a new trial.[1] Cf. *Cooper v. State*, 527 S.W.2d 898 (Tex.Cr.App.1975); *Saunders v. State*, 511 S.W.2d 281 (Tex.Cr. App.1974); and *Miller v. State*, 472 S.W.2d 269 (Tex.Cr.App.1971). In this sense, a

judgment and sentence were considered void since *there was no way to cure the infirmity.* See *Spaulding*, supra. See also *Releford*, supra at 387; and *Ramirez v. State*, 587 S.W.2d 144 (Tex.Cr.App.1979).

Since the previous cases were decided, however, the Legislature has enacted a new law which enlarges the authority of courts to reform judgments, thus providing a way to cure the infirmity. Senate Bill 1349, Acts, 69th Leg., effective June 11, 1985, amended Article 37.10, V.A.C.C.P., by adding paragraph (b), which provides:

"If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law. If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection."

Thus, under the new law, a court is authorized to reform a verdict and judgment containing unauthorized punishment, an infirmity which would have previously rendered the verdict void.

Given the verdict and judgment in the instant case was, in part, not authorized by law, we must determine whether Art. 37.-10(b) applies to Cause No. 314984.

 Since the amendment does not constitute substantive law defining criminal acts or providing for penalties, it is procedural in nature. Thus, in the absence of express legislative intent to the con-

---

**1.** Writing for this Court in *Bogany*, supra, Judge Odom stated:

"The controlling law did not authorize the Court of Appeals to change the verdict rendered by the jury. The verdict was unauthorized by law and ... was 'void at its inception.' The verdict must be set aside."

*Id.*, at 959.

In his concurring opinion to *Bogany*, Judge Teague stated:

"[The Legislature] has never seen fit to give this Court or any intermediate appellate court of this State authority to assess punishment or reduce punishment assessed by a jury where the conviction was for a non-capital felony.... [T]he intermediate appellate court and this Court are without authority to either assess a different punishment, reduce the punishment assessed, or reform the punishment assessed."

*Id.*

trary,[2] the new law controls litigation from its effective date and applies to both pending and future actions. See *Wade v. State,* 572 S.W.2d 533 (Tex.Cr.App.1978), and cases cited therein at 534. See also *Patterson v. State,* 650 S.W.2d 453 (Tex.App.— Houston [14th] 1982). We must therefore follow the Legislature's mandate and reform that portion of the verdict unauthorized by law.

Assessment of the $10,000.00 fine against applicant in Cause No. 314984 was unauthorized. We therefore reform the verdict and judgment in that cause to delete the improper fine. Since the $5,000.00 fine assessed in Cause No. 314983 was authorized, applicant's request for relief in that case is denied. The Clerk of this Court shall send a copy of this order to the Texas Department of Corrections.

TOM G. DAVIS, J., not participating.

CAMPBELL, Judge, concurring.

In order to harmonize my opinion in *Ex parte Spaulding,* 687 S.W.2d 741 (Tex.Cr. App.1985), with this Court's majority today, I offer the following observations.

This Court's past use of the term "void at its inception" to describe the status of the *entire*[1] verdict and judgment, as we did in *Bogany v. State,* 661 S.W.2d 957 (Tex.Cr.App.1983), has not been entirely accurate. See also, *Ex parte McIver,* 586 S.W.2d 851 (Tex.Cr.App.1979). By characterizing the entire verdict and judgment as "void at its inception" in *Bogany*-type situations, we have implied that no cure for an unauthorized sentence could ever be supplied by an appellate court other than reversal of the entire conviction. *Spaulding,* supra at 743.

The voidness of the *entire* verdict and judgment in *Bogany,* supra at 958 and 959, depended directly upon the unavailability of any remedy at law other than reversal

of the entire conviction. However, the only *portion* of the verdict and judgment that was truly void was that portion which included an unauthorized fine. The error in the verdict might have been more accurately designated as a *partially* void verdict from which this Court lacked any remedy other than reversal. Because this Court lacked any authority to separate the void portion of the verdict from the remaining valid portion of the verdict, we were forced to "void" the entire verdict and judgment by reversing the entire conviction.

In such context, the opinion in *Spaulding* was correct in noting that the verdict was "void at its inception," at least as to that portion of the verdict which contained an unauthorized fine. Because we did not yet have a remedy for *Bogany* error, we had no choice but to "void" the remainder of the verdict by reversing the conviction.

The remedies available to a court regarding a *partially* void verdict differ from the remedies available where an *entire* verdict is void. A verdict which is entirely void at its inception generally results from a defective condition, such as a lack of jurisdiction, permeating the entire verdict and creating a defect from which no remedy *ever could* be supplied by this Court other than reversal. *Ex parte Charles,* 582 S.W.2d 836, 837 (Tex.Cr.App.1979).

The legislature, by granting this Court the power to regulate the assessment of an unauthorized verdict, has not removed from the jury the power to set punishment. The authorized portion of the verdict is retained, and the defendant has been gratuitously benefited by an arguably lesser sentence than might otherwise have been assessed.

In deliberating over the proper punishment to be assessed in this case, the jury effectively was given a greater range of punishment than legally should have been

---

2. We especially note the absence of any language directing that this amendment shall apply to cases begun, tried or indicted, etc., after a particular date. Cf. the treatment of Art. 32A.02, V.A.C.C.P. in both Acts 1977, 65th Leg., p. 1970., ch. 787, eff. July 1, 1978, and in Acts

1979, 66th Leg., p. 4, ch. 3, § 1, eff. Sept. 1, 1979.

1. All emphasis is supplied by the author unless otherwise indicated.

allowed. The jury had no authority to include a fine; therefore, our removal of the fine takes nothing away from the jury's function. By reducing the sentence, through elimination of the fine, this Court has only retained that portion of the verdict which was properly returned by the jury.

With these comments, I join the opinion and judgment of the Court.

ONION, Presiding Judge, dissenting.

The question posed by this case is whether the Court of Criminal Appeals may utilize the 1985 amendment to Article 37.10, V.A.C.C.P., in a post-conviction writ of habeas corpus proceedings under Article 11.-07, V.A.C.C.P., and reform a jury's verdict in 1980 which was void from its inception.

The majority says it can be done. I do not agree.

The applicant was charged with aggravated robbery in Cause No. 314984 in the 262nd District Court. In addition to the proper range of punishment for the first-degree felony charged where a prior felony has been alleged and proved, V.T.C.A., Penal Code, § 12.42 (1974), the court in its jury charge authorized the jury to return a fine not to exceed $10,000.00. The jury instruction as to fine was improper. It was not a valid punishment. See *Bogany v. State*, 661 S.W.2d 957 (Tex.Cr.App.1983). The jury returned a verdict on June 17, 1980, assessed 50 years' imprisonment in the Department of Corrections and also assessed a $10,000.00 fine. When the jury verdict was accepted and the jury discharged on the same date, the verdict was void at its inception. The judgment that was subsequently entered and which had to be based on the verdict was also void as well as the sentence based on the judgment. See Article 42.01 and 42.02, V.A.C.C.P., in effect at the time. Thus applicant's conviction was void.

Appellant appealed his 1980 conviction for aggravated robbery (Cause No. 314984) to the Court of Criminal Appeals, and it was filed as Cause No. 68,733. Only one ground of error was raised which concerned the admission into evidence of certain State's exhibits. The improper assessment of punishment was not mentioned. The conviction was affirmed on November 9, 1983 in an unpublished per curiam opinion which did not consider the assessment of punishment. This was prior to the *Bogany* decision.

We now know that in situations such as applicant's appellate courts, at least prior to the 1985 amendment to Article 37.10, supra, could not reform the jury's verdict. *Bogany v. State, supra.* Nor could the Governor, using his constitutional powers of clemency, make things right. *Ex parte Spaulding*, 687 S.W.2d 741 (Tex.Cr.App. 1985). All the King's men and all the King's horses could not put Humpty Dumpty together again. Lewis Carroll, "Alice in Wonderland."

On May 3, 1985, applicant filed his post-conviction writ of habeas corpus in the convicting district court. See Article 11.07, V.A.C.C.P. He sought the same relief as *Bogany* and *Spaulding* and company.[1] The judge of the convicting court entered an order recommending that such relief be denied in Cause No. 314984. The record was transmitted to this Court and received on May 29, 1985. On June 19, 1985, eight days after the effective date of the 1985 amendment to Article 37.10, this Court ordered the habeas corpus proceedings to be filed and submitted.

In response to the overreaction to *Bogany* by some, the Legislature amended Article 37.10, V.A.C.C.P., by adding subsection (b), which reads:

"(b) If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show

1. See *Releford v. State,* 683 S.W.2d 385 (Tex.Cr. App.1984); *Carey v. State,* 677 S.W.2d 821 (Tex. App.—Ft. Worth 1984); *Westerholt v. State,* 681 S.W.2d 67 (Tex.App.—Houston [14th] 1984— Discretionary Review Refused). See also *Diaz v. State,* 663 S.W.2d 114 (Tex.App.—Houston [1st] 1983); *Henderson v. State,* 666 S.W.2d 522 (Tex.App.—Waco [10th] 1983).

the punishment authorized by law and to omit the punishment not authorized by law. If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection." (Acts 1985, 69th Leg., p. 3009, ch. 442, S.B. 1349, effective June 11, 1985.)

Does this 1985 Act apply to the 1980 verdict? Can it be applied retroactively? That is the question.

Article I, § 16, Texas Constitution, provides:

"No bill of attainder, ex post facto low, retroactive law, or any law impairing the obligations of contracts, shall be made."

In the Interpretive Commentary to Article I, Sec. 16, of the Texas Constitution (Vol. I, pp. 371, 372, Vernon's Constitution of the State of Texas, Annotated), it is written:

"An ex post facto law, constitutionally speaking, is one that makes an action done before the passage of the law, and which was innocent when done, criminal, and punishes such action, *De Cordova v. Galveston*, 4 T. [Tex.] 470 (1849); that aggravates a crime, or makes it greater than it was when committed, *Holt v. State*, 2 T. [Tex.] 363 (1847); that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed, *Holt v. State*, supra; or which changes the rules of evidence, and receives less or different testimony, than the law required at the time of the commission of the offense in order to convict the offender. *Holt v. State*, supra. Although ordinarily laws changing procedure are not within the inhibition, still if a procedural change is retroactive and results in depriving the accused of substantial protection, it is unconstitutional. *Ex parte Roper*, 61 [Tex.] Cr.R. 68, 134 S.W. 334 (1911).

"The Texas Constitution goes further than the United States Constitution for

the former is not confined to forbidding ex post facto laws, i.e., retroactive penal legislation, but it also lays a ban on any retroactive law. In prohibiting retroactive laws, the Texas Constitution seeks to safeguard rights not guaranteed by other constitutional provisions such as the impairment of the obligation of contracts and due process of law clauses. *Mellinger v. City of Houston*, 68 T. [Tex.] 37, 3 S.W. 249 (1887).

"A retroactive law is one meant to act on things that are past. As such, a statute is retroactive which takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes new duties, or adopts a new disability in respect to transactions or considerations already past, and which affects acts or rights accruing before it came into force. *Turbeville v. Gowdy*, [Tex.] Civ.App., 272 S.W. 559 (1925)."

In 53 Tex.Jur.2d, Statutes, § 29, pp. 49–50, it is written:

"A prospective law is distinguished from one that is retroactive by the fact that the latter affects acts or transactions that occurred before it came into effect, or concerns rights that have already accrued. The constitution prohibits the making of retroactive laws. But the constitutional provision is construed merely as forbidding the enactment of any law that will prejudicially affect existing, vested rights, whether arising out of contract or tort, or the operation of a law in such a manner as to have that effect. The inhibition is not ordinarily extended to a procedural or remedial statute, such as a curative act, or, in fact, to any act that does not disturb or impair vested rights."

It appears clear then the constitutional inhibition does not ordinarily apply to procedural or remedial statutes unless the individual is deprived of substantial protection, *Ex parte Roper*, supra, or his rights are impaired.[2]

---

**2.** In *McCain v. Yost*, 284 S.W.2d 898, 900 (Tex. 1955), the Supreme Court of Texas stated:

"A statute cannot be said to be a retroactive law prohibited by the Constitution unless it

Entirely apart from any state constitutional impediment, retrospective laws are commonly regarded with disfavor. *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487 (1943); 53 Tex.Jur.2d, Statutes, § 29, p. 51. Generally statutes are not to be applied retroactively. *Ex parte Abahosh*, 561 S.W.2d 202, 204 (Tex.Cr.App.1978); *Ridyolph v. State*, 545 S.W.2d 784 (Tex.Cr.App.1977); *Pesch v. State*, 524 S.W.2d 299 (Tex.Cr.App.1975). The general presumption is that an act is intended to operate prospectively and not retroactively and any doubt is to be resolved against retroactive application. *Ex parte Abell*, 613 S.W.2d 255 (Tex.1981); *Gov.' & Personnel Mutual Life Ins. Co. v. Wear*, 251 S.W.2d 525 (Tex. 1952). A statute will not be applied retrospectively unless it appears by fair implication from the language used in the entire act that it was the intent of the Legislature to make it applicable to both past and future actions. *Ex parte Abell*, supra, and cases there cited. See also *Fed-Mart of Texas, Inc. v. Calvert*, 474 S.W.2d 297 (Tex. Civ.App.—Austin 1971); *Harvey v. Denton*, 601 S.W.2d 121 (Tex.Civ.App.—Eastland 1980, ref. n.r.e.). Manifest intention of the Legislature is controlling circumstance in interpreting a statute as having retrospective or only prospective effect. *Deacon v. City of Euless*, 405 S.W.2d 59, 61 (Tex.1966); *Sloan v. Calvert*, 497 S.W.2d 125 (Tex.Civ.App.—Austin 1973).

The language in some of the cases are not always consistent with regard to procedural and remedial matters. Some cases indicate the Legislature must indicate, at least by fair implication, that a statute will be retroactive for it to be such, even with respect to procedural matters. *Simpson v. Texas Employers Ins. Assoc.*, 519 S.W.2d 209, 213 (Tex.Civ.App.—Ft. Worth 1975), and cases there cited. Other cases cite the general rule that statutes will not be given retroactive effect in absence of clearly expressed legislative intent, with a recognized exception where the statute deals with procedural or remedial matters as opposed to substantial rights. *Cass v. McFarland's Estate*, 564 S.W.2d 107 (Tex. Civ.App.—El Paso 1978); 53 Tex.Jur.2d, Statutes, § 28, p. 51.

Since there are recognized exceptions to the general rule of the statutory matter, it is procedural or remedial, and does not impair vested rights, *Exxon Corporation v. Brecheen*, 526 S.W.2d 519, 515 (Tex. 1975); *Southwestern Bell Tel. Co. v. City of Kountze*, 543 S.W.2d 871, 875 (Tex.Civ. App.—Beaumont 1976), it is observed that unless otherwise provided such procedural or remedial applies to both pending and future actions and becomes operative on the effective date of the legislation. *Wade v. State*, 572 S.W.2d 533 (Tex.Cr.App.1978); *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr. App.1976), cert. den. 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250; *Wilson v. State*, 473 S.W.2d 532 (Tex.Cr.App.1971). See also *Patterson v. State*, 650 S.W.2d 453 (Tex. App.—Houston [14th] 1982).

The majority views the 1985 amendment to Article 37.10 as a procedural statute. It also appears remedial. See *Pratt v. Story*, 530 S.W.2d 325 (Tex.Civ.App.—Tyler 1975). Nevertheless, the rules as to such statutes are generally the same. There is no dispute that the verdict returned against applicant in trial court Cause No. 314984 was void ab initio and that his final conviction based thereon was void, although not legally adjudicated as such prior to said statutory amendment. Without said amendment there would be no question but what he would be entitled to relief the same as *Bogany, Spaulding* and company. If the 1985 amendment is applied retroactively, applicant will be entirely deprived of that relief. If applied retroactively, then what was a void verdict at its inception in 1980 will now become a valid verdict in 1985 by this Court's action pursuant to the amendment to Article 37.10 in a post-conviction habeas corpus proceedings under Article 11.07, V.A.C.C.P., initiated by applicant pri-

can be shown that the application of the law would take away or impair vested rights ac-

quired under existing law."

or to the effective date of the said amendment.

It is clear that manifest intention of the Legislature is the controlling circumstance in interpreting whether a statute can be applied retroactively or only prospectively. *Deacon v. City of Euless,* supra; *Sloan v. Calvert,* supra. Only a glance at the amendment shows that the Legislature intended for the statute to have prospective application only. It provides in part:

"If the trial court is required to reform a verdict *under this subsection* and fails to do so, the appellate court shall reform the verdict as provided by this section."

When the verdict in the instant case was returned and accepted and the jury discharged, this amendment or subsection was not in effect. The wording of the amendment clearly indicates the legislative intent that the act was to be utilized by an appellate court only where the trial court was "required to reform a verdict under this subsection" and failed to do so. The amendment not being in effect in 1980, it has no application to applicant's cause or to the action of this Court on his application for post-conviction writ of habeas corpus.

If the majority is determined to apply the statute retroactively merely because it is procedural in nature, then it must, in fairness to the bench and bar, come to grips with other questions. It must be decided whether such procedural statute has retroactive application to post-conviction habeas corpus proceedings as a pending or future action. It must decide, despite the claimed procedural nature of the statute, whether it deprives the applicant of substantial protection, due process of law, due course of the law of the land (Article I, § 19, Tex.Const.), the constitutional right of trial by jury, and generally whether the Legislature may validate void convictions in such a manner.[3]

For the reasons stated, I vigorously dissent to the action of the majority. The applicant is entitled to relief.

CLINTON, Judge, dissenting.

Finding that our prior decisions regarding an unauthorized jury verdict "share a common premise and conclusion," the majority believes that "[t]he logic connecting the premise and conclusion involves the lack of specific vehicle by which the improper verdict could be reformed." Slip Opinion, p. 3. The majority is mistaken.

---

**3.** The guarantee of a right to trial by jury in the Sixth Amendment, United States Constitution, is made applicable to the States by the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Article I, § 10 of the Texas Constitution provides that an accused in a criminal prosecution shall have a speedy public trial by an impartial jury. Article I, § 15 of the said State Constitution provides that the right of trial by jury shall remain inviolate. See also Article 1.12, V.A.C.C.P.; 35 Tex.Jur.2d, Jury, § 9, p. 45. When the jury is to assess punishment under Article 37.07, V.A.C.C.P., the jury must assess in their verdict the punishment intended to be imposed where it is not otherwise fixed by law. Under these circumstances assessment of punishment is exclusively within the province of the jury. See 57 Tex.Jur.2d, Trial, § 393, p. 28.

It has been fundamental that a trial judge does not have the authority to receive a jury's verdict and then refuse to abide by it, *Hardy v. State,* 261 S.W.2d 172 (Tex.Cr.App.1953), nor change the verdict in any material part, *Champion v. State,* 19 S.W.2d 63, 65 (Tex.Cr.App. 1929), nor give effect to part of the verdict and ignore some other part and enter another and

different judgment from that called for by the jury's verdict. *Combes v. State,* 162 Tex.Cr.R. 482, 286 S.W.2d 949 (1956); *King v. State,* 135 Tex.Cr.R. 71, 117 S.W.2d 800 (1938).

*Castro v. State,* 118 Tex.Cr.R. 53, 42 S.W.2d 779 (1931), held void the trial court's action in disregarding (upon the State's motion) the recommendation of the jury that the sentence be suspended. There this Court held the action of the trial court violated the

"... fundamental principle that the judge presiding over a trial has no right and no power to change a verdict rendered by the jury unless with their consent and before their discharge. The rights of the accused, under such circumstances, to have the judgment follow the verdict, if formal and agreeable to the issues submitted, is absolute...."

In *Smith v. State,* 479 S.W.2d 680 (Tex.Cr.App. 1972), the court on its own, struck a portion of the punishment assessed by the jury. Since the verdict assessed an unauthorized punishment, the verdict was held void at its inception and that the trial court had no authority to change the verdict by deleting the offending portion. See also *McIver v. State,* 586 S.W.2d 851 (Tex.Cr. App.1979).

The real reason for the rule flows from the constitutional character and immutable principles of trial by jury in a criminal action. Article I, §§ 10 and 15, Constitution of the State of Texas; see, e.g., *Freeman v. State*, 143 Tex.Cr.R. 265, 186 S.W.2d 683 (1945);[1] *Moreau v. Bond*, 114 Tex. 468, 271 S.W. 379 (1925);[2] *Ex parte Quintanilla*, 151 Tex.Cr.R. 328, 207 S.W.2d 377 (1947, 1948).[3]

The dual guarantees of the right of an accused to trial by jury in Article I, §§ 10 and 15 of the Constitution of the State of Texas must be construed together. *Dabney v. State*, 124 Tex.Cr.R. 21, 60 S.W.2d 451 (1933); *Ex parte Holland*, 91 Tex.Cr.R. 339, 238 S.W. 654, 655 (1922); *Moore v. State*, 22 Tex.App. 117, 2 S.W. 634, 635 (1886). Though the latter authorizes the Legislature to pass laws "to regulate the same, and to maintain its purity and efficiency," it is axiomatic that the clause "does not permit reduction of the right," Interpretive Commentary to § 15, or, as stated by Mr. Bishop, "the substance of it cannot be impaired," 1 Bishop, Criminal Procedure (3rd.Ed.) § 893, quoted approvingly in *Moore v. State*, supra, 2 S.W. at 636.[4]

The constitutional right to trial by jury includes, among other prerequisites, that jurors must take an oath that each "will *a true verdict* render according to the law and evidence ...," Article 35.22, V.A.C.C.P.,[5] and "[i]t has been held by all the courts ... that [jurors] sitting in judgment, unsworn, do not constitute a jury," and that "a conviction by an unsworn jury is a mere nullity," *Crisp v. State*, 87 Tex.Cr.R. 137, 220 S.W. 1104, 1106 (1920).[6] That requisite is laid down because the ultimate function and plain duty of a jury in this State have practically always been, first, to "speak the truth between the State and the defendant by their verdict of 'guilty' or 'not guilty' of any one of the offenses of which he may be convicted" and, secondly, "to assess the punishment if the same is not absolutely fixed by law." *Buster v. State*, 42 Tex. 315, 318–319 (1875). By our current statutory definition, "A 'verdict' is a written declaration by a *jury* of *its decision* of the issue submitted to it in the case." Article 37.01, V.A.C.C.P. And, where the issue of punishment is referred to the jury, "the verdict shall not be complete until the jury has rendered a verdict on both the guilt or innocence of the defendant and the amount of punishment,

1. "The right of trial by jury is one of the sacred rights which our courts should accord every person charged with crime, independent of his guilt or innocence. Our Constitution guarantees to every person charged with crime a fair and impartial trial, with the right to submit the matter of punishment to a jury, even when he pleads guilty to the offense ... unless and until waived in accordance with law." *Id.*, 186 S.W.2d at 684.

2. "Those rights, fundamental in their nature, which have been guaranteed by the Bill of Rights cannot be the subject of judicial discretion. Judicial discretion is a legal discretion and not a personal discretion—a legal discretion to be exercised in accordance with the Constitution and the laws of the land." *Id.*, 207 S.W.2d at 379–380.

3. "The record before this court shows affirmatively by the recitals in the judgment that no punishment was assessed by the jury, but was fixed by the ... Judge. Such a judgment in this character of case is void." *Id.*, 207 S.W.2d at 379.

4. "It is also the well settled law of this state that a jury in district court means a jury composed of 12 jurors. Such is the requirement of the Constitution of Texas, Art. V. § 13. *Clark v. State*, Tex.Cr.App., [161 Tex.Cr.R. 278] 276 S.W.2d 819 [1955]." *Houston v. State*, 162 Tex.Cr.R. 551, 287 S.W.2d 643, 652 (Tex.Cr.App. 1956), cert. denied 351 U.S. 975, 76 S.Ct. 1042, 100 L.Ed. 1492 (1956), rehearing denied 352 U.S. 861, 77 S.Ct. 28, 1 L.Ed.2d 72 (1956). So, for example, a legislative provision for a jury of six in a district court "violates Article I, Section 15" and is, therefore, "invalid." *Jordan v. Crudgington*, 149 Tex. 237, 231 S.W.2d 641, 646–647 (1950); see also dissenting opinion of Smedley, J., 231 S.W.2d at 651, and of Griffin, J., 231 S.W.2d at 654.

5. All emphasis is mine throughout unless otherwise indicated.

6. The finding of the Court in *Crisp v. State*, supra, and in *Hewey v. State*, 87 Tex.Cr.R. 248, 220 S.W. 1106, 1108 (1920), that the oath actually taken must include "so help you [me] God" was overruled in *Craig v. State*, 480 S.W.2d 680, 684 (Tex.Cr.App.1972).

where the jury finds the defendant guilty." Article 37.07, § 3(c). Misdemeanor cases within the jurisdiction of justice and municipal courts aside, "Article 37.07 applies to *all* criminal cases ... with the express exception [§ 2(b)] as to who is to assess punishment in cases under Article 37.071, supra," *Eads v. State,* 598 S.W.2d 304, 308 (Tex.Cr.App.1980) (emphasis in original opinion).

A trial court "cannot render a verdict or any part thereof," *Harrison v. State,* 162 Tex.Cr.R. 301, 284 S.W.2d 367 (1955). When Judge Woodley wrote that he was echoing what dissenting Judge W.L. Davidson had insisted in his repetitive way was the law in *Bessett v. State,* 78 Tex.Cr.R. 110, 180 S.W. 249 (1915), *viz:*

> "An illegal verdict is a paradox. If illegal, it is not to be received or enforced. * * * The judge cannot render a verdict, or any portion of it, except as the jury returns it. He must either take the verdict as it is, or send the jury back to agree in accordance with law. * * * The judge is not a juror, and cannot render a verdict, or any part of it, in a felony case, nor can he substitute his judgment for the verdict of a jury. He has the power to cause a correct and proper verdict to be returned, and, if such verdict is not rendered, he can retire the jury till they agree on such verdict. He cannot substitute his judgment, however, for an incorrect or illegal verdict."

*Id.,* 180 S.W. at 250–251. Of course, as a general proposition, Judge Davidson was correct then,[7] and in the context stated his

views came to be accepted by the Court. See *Pritchard v. State,* 117 Tex.Cr.R. 106, 35 S.W.2d 717 (1931); see also *Castro v. State,* 118 Tex.Cr.R., 53, 42 S.W.2d 779 (1931). Today, though a trial court may cause to be corrected an informal, contradictory or otherwise illegal verdict in accordance with Article 37.10, V.A.C.C.P., *Ex parte McIver,* 586 S.W.2d 851, 854 (Tex.Cr. App.1979), it is still true that "the court cannot substitute its judgment for the jury's verdict," *Eads v. State,* 307.

That admonishment is especially compelling "where the defect or insufficiency in the verdict relates to the assessment of punishment," *id.,* at 306. *Horn v. State,* 117 Tex.Cr.R. 22, 35 S.W.2d 145, 146–147 (1931). It is not, as the majority would have it, "the lack of a specific vehicle by which the improper verdict could be reformed" which precludes a court from reforming the verdict. Rather, the problem is that neither the trial court nor an appellate court is capable of determining with confidence "the true finding of the [jury as] fact finder" on the matter of punishment.[8] Thus, an unauthorized verdict is held to be "void at the inception," *Releford v. State,* 683 S.W.2d 385, 386 (Tex.Cr.App. 1984); *Bogany v. State,* 661 S.W.2d 957, 959 (Tex.Cr.App.1957), because only in that way may the right to trial by jury with "a true verdict" remain inviolate.

With deference, I respectfully dissent.

TEAGUE, Judge, dissenting.

It is true, as Judge Miller points out in the majority opinion he authors for the

---

7. *Slaughter v. The State,* 24 Tex. 410, 413–416 (1859); *Alston v. The State,* 41 Tex. 39 (1874); *May v. State,* 6 Tex.App. 191 (Ct.App.1879); *Jones v. State,* 7 Tex.App. 103 (Ct.App.1879); *Gage v. State,* 9 Tex.App. 259 (Ct.App.1880); *Wooldridge v. State,* 13 Tex.App. 443, 454–462 (Ct.App.1883); *Walker v. State,* 13 Tex.App. 618 (Ct.App.1883); *Taylor v. State,* 14 Tex.App. 340 (Ct.App.1883); *Robinson v. State,* 23 Tex.App. 315, 4 S.W. 904 (Ct.App.1887); *Guest v. State,* 24 Tex.App. 530, 7 S.W. 242 (Ct.App.1888); *Rocha v. State,* 38 Tex.Cr.R. 69, 41 S.W. 611 (1897); *Jones v. State,* 54 Tex.Cr.R. 507, 113 S.W. 761 (1908); *Murphree v. State,* 55 Tex.Cr.R. 316, 115 S.W. 1189, 1190 (1909).

8. As the Supreme Court pointed out more than one hundred years ago in *Buster v. The State,* supra, at 319:

> "To support the judgment, the court must be *able to see from the verdict* of 'guilty' returned by the jury, that it authorizes and requires the assessment of a penalty affixed by law, or that the penalty assessed is warranted by law. And also that the jury are not mistaken in degree of the offense of which they have, in fact, found the defendant guilty, and imposed a penalty not affixed to it by law. How can the court *know this,* unless the verdict finds the offense, or its degree, as well as the penalty?"

Court, that in the concurring opinion that I filed in *Bogany v. State*, 661 S.W.2d 957 (Tex.Cr.App.1983), I opined: "[The Legislature] has never seen fit to give this Court or any intermediate appellate court of this State authority to assess punishment or reduce punishment assessed by a jury where the conviction was for a non-capital felony." I also opined, by way of dictum, that "[because] the jury [in that case] could not assess a fine, in addition to the time assessed, *its verdict was void at the inception.*" (My emphasis).

However, the main issue in *Bogany v. State*, supra, was not whether the jury had returned an unauthorized verdict, concerning punishment, but, instead, was whether the court of appeals had the authority and jurisdiction to reform on direct review the judgment of conviction in that cause, by deleting therefrom the fine that had been assessed by the jury. This Court held that it did not have such authority and reversed; thus making the above-underscored dictum. Soon thereafter, I discovered that I had opined too much in the opinion that I filed in *Bogany v. State*, supra.

When the first opportunity presented itself, I attempted to clarify my dictum. In *Ex parte Spaulding*, 687 S.W.2d 741 (Tex. Cr.App.1985), I did so by filing a concurring and dissenting opinion. I wrote, not because I believed that in the future the Legislature of this State would enact a new law giving trial and appellate courts of this State the authority to reform verdicts or judgments, where the punishment assessed was not authorized by law, which it did during the recent, but last regular session of the Legislature, because I am not prescient, but did so because I believed that it was necessary to clarify the above underscored portion of the opinion that I had filed in *Bogany*, supra. In *Ex parte Spaulding*, supra, I agreed, for the reasons stated therein, with the result that the majority opinion authored by Judge Campbell had reached. I did so because the Governor had violated the division of powers that the Constitution of Texas mandates. He was thus without lawful authority to order a remission of the defendant's

sentence. However, I attempted in my opinion to point out to the other members of this Court, among other things, that there was a distinction between a void judgment and a voidable judgment. I stated that, "... barring any other facts, that which the Governor did in this cause was a valid act ...," because he was dealing, not with a void judgment, but, instead, was dealing with a voidable judgment. My opinion, however, was not a very convincing one; it received only one vote—mine.

Judge Campbell, however, in *Ex parte Spaulding*, supra, made no bones about what he stated or what he intended to state for this Court, when it came to "Bogany error." Judge Campbell, unequivocally, and without any ifs, ands, or buts, expressly held for the Court that "Bogany error" rendered a judgment of conviction totally and absolutely void, *void ab initio* if you please, thus relegating such to be equivalent to a dead limb on a tree, with such being vulnerable to being chopped off at any time, or, to put it in legalese language, "[I]t is a nullity from the beginning, and may be treated as such without further proceedings to have such nullity judicially declared." Teague, J., Concurring and Dissenting Opinion in *Ex parte Spaulding*, supra.

After quoting from *Black's Law Dictionary* 1745 (Fourth Ed. 1968, West Publishing Co.), Judge Campbell then reemphasized the Court's holding: "Void is further defined in Black's as *that which nothing can cure*," (My emphasis), and implicitly applied such definition to the judgment in that cause.

Furthermore, but in order to make sure that nobody misunderstood what he was saying, or what he intended to state for the Court, Judge Campbell further stated: "Such judgment and sentence being void, the error is *incurable* and any subsequent attempt at remitting (reforming, in this instance) the fine portion of a void sentence is also void." (My emphasis.) Unquestionably, Judge Campbell did not mince any words about the subject, and made clear to

all what this Court was holding when it came to "Bogany error," namely, that if there was "Bogany error" in the verdict of the jury, such rendered the conviction *void ab initio.*

I pause to point out that only Judge White dissented, without opinion, in *Ex parte Spaulding,* supra. Judge Clinton, joined by Presiding Judge Onion, filed a concurring opinion, opining that "we need not strain [today] to distinguish the judgments in those cases from the one here by calling the former 'voidable' and the latter 'void.'" I pointed out in my opinion that "In this instance, I believe that it is necessary that we so strain." However, Judge Clinton, like Judge Campbell did, also did not mince any words about the matter, and told us what the "true" rule was: "The true rule in Texas is that an appellate court 'may not reduce the punishment assessed by the jury.'" And, he may be right, notwithstanding that his opinion received only two votes: his and Presiding Judge Onion's.

Judge Miller, the author of the majority opinion, who did not write in *Ex parte Spaulding,* supra, implicitly declares for the Court today that even though this Court made the above express and unequivocal statements in *Ex parte Spaulding,* supra, that that is not what the Court actually meant to state, but the Court, instead, actually intended to state the following: "In this sense, [when an unauthorized verdict is returned by a jury and accepted by the trial judge], a judgment and sentence [are] . . . void since there [is] no way to cure the infirmity," and reasons that because of the recently enacted legislation "Bogany error" can now be cured by reformation. Facially, this sounds all well and good. However, that is the problem with the majority opinion; it is only facial; it lacks depth and complete analysis.

Presiding Judge Onion of this Court is often prone to utter, when he reads something in law that to him is without legal foundation: "Color Me Amazed." After reading what Judge Miller has written, I am compelled to echo Judge Onion's exclamation.

For the reasons that I stated in the concurring and dissenting opinion that I filed in *Ex parte Spaulding,* supra, now that the Legislature has given this Court, among others, the authority to reform an unauthorized verdict, I am unable to facially state that any judgment of conviction occurring *after* the effective date of that legislation is coram non judice or brutum fulmen, rather than being only a voidable judgment, subject only to direct attack on appeal.

However, but in light of what Judge Clinton has stated, it should be incumbent upon this Court to discuss why that is so, rather than to hide behind the time-worn expression that "even though I said it, that is not what I intended to say, because I meant to say the following." [1]

In light of what this Court stated in *Ex parte Spaulding,* supra, if for no other reason than for this Court to save face, I would only apply the new legislation prospective from the date it became effective, and not make it retroactive as the majority does. I dissent to such action by the majority.

I also dissent because of the failure of the majority to discuss in its opinion the issue that Judge Clinton raises in the concurring opinion he has filed, namely, that no court has the authority or power to "monkey" with a jury's verdict on punishment.

In general, because I cannot adopt what the majority has stated, I must respectfully dissent.

---

**1.** Cf. *Alice's Adventures in Wonderland,* by Lewis Carroll.