**Stephen Clay JOHNSTON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–02–00114–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 17, 2002.

Decided Feb. 5, 2003.

Rehearing Overruled March 12, 2003.

Stephen Clay Johnston, Blossom, for appellant.

Mark Burtner, County Attorney, and Gary L. Waite, Assistant County Attorney–Appellate Section, Paris, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Stephen Clay Johnston appeals the trial court's denial of his motion for forensic DNA testing. On June 2, 2000, Johnston was convicted of two aggravated assault offenses, retaliation, and two failure to ap-

pear/bail jumping offenses. He was sentenced to three years' imprisonment for each offense. The sentences were ordered to run concurrently. This Court dismissed Johnston's appeals for want of jurisdiction.

In September 2001, Johnston filed a pro se motion and supporting affidavit seeking post-conviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. The State filed a response and supporting affidavit. The trial court overruled Johnston's motion without a hearing and issued findings of fact and conclusions of law.[1]

In his motion and supporting affidavit, Johnston alleged the following: (1) that on June 2, 2000, he pled guilty to aggravated assault and was sentenced to three years' imprisonment; (2) that the State had custody of evidence that, at the time of his prosecution, was known to contain biological material that, if subjected to scientific testing, would more likely than not establish the identity of the person who committed the offense or exclude a person from the group of persons who could have committed the offense; see TEX.CODE CRIM. PROC. ANN. art. 38.39(b) (Vernon Supp. 2003); (3) that the State should have preserved the evidence under Article 38.39; (4) that there is a reasonable probability he "would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing"; and (5) that DNA testing should be conducted on the evidence under Chapter 64 of the Texas Code of Criminal Procedure.

The State filed a response and supporting affidavit from William Harris, an assistant county attorney for Lamar County, alleging (1) that on June 2, 2000, Johnston pled guilty to, and was sentenced for, two aggravated assault offenses, and to retaliation and two failure to appear/bail jumping offenses stemming from the aggravated assault offenses; (2) that on May 10, 2001, this Court dismissed Johnston's appeals for want of jurisdiction; (3) that the records from Johnston's case indicate there was evidence possibly containing biological material; (4) that the evidence was destroyed in the routine course of business of the Paris Police Department; (5) that no party requested forensic DNA testing either before Johnston's trial or after his conviction and sentencing; (6) that at no time did a party request the evidence be preserved for post-conviction analysis; (7) that Article 38.39 did not apply to Johnston; and (8) that Johnston did not meet the requirements for forensic DNA testing under Chapter 64.

In its findings of fact, the trial court found (1) that Article 38.39 was enacted after Johnston was convicted; (2) that evidence possibly containing biological material was collected during the investigation of the offenses; (3) that the evidence was physically destroyed in the routine course of business by the Paris Police Department on or about June 15, 2001, after this Court dismissed Johnston's appeals; (4) that no party previously requested forensic DNA testing or that the evidence be preserved; (5) that the State did not act in bad faith in destroying the evidence; (6) that an evidentiary hearing would provide no additional facts necessary to the trial court's resolution of Johnston's motion; and (7) that Johnston's identity was not at issue in his conviction.

In its conclusions of law, the trial court concluded (1) that Article 38.39 does not apply to Johnston's case; (2) that Article 38.39 does not provide Johnston any avenue of post-conviction relief; (3) that Johnston cannot establish by a preponderance

---

1. Because Johnston's motion implicated both his aggravated assault convictions, the trial court docketed two causes and we docketed two appeals. We address the other appeal in a separate opinion.

of evidence that a reasonable probability exists he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing; (4) that sufficient probable cause existed to arrest, charge, and indict Johnston for aggravated assault and that he would have been prosecuted notwithstanding the absence of forensic DNA testing; and (5) that Johnston's motion was made to unreasonably delay the execution of his sentence and the administration of justice.

■ On appeal, Johnston contends that Article 38.39 does apply to his case and that he met the requirements of Chapter 64. In reviewing a trial court's ruling under Chapter 64, we must afford almost total deference to the trial court's determination of issues of historical fact and of application-of-law-to-fact questions that turn on credibility and demeanor, while reviewing de novo other application-of-law-to-fact questions. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex.Crim.App.2002) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997)). Though no other court has so held, we believe this is also the appropriate standard for reviewing rulings made under Article 38.39.

Article 38.39(a) provides:

In a criminal case in which a defendant is convicted, the attorney representing the state, a clerk, or any other officer in possession of evidence described by Subsection (b) shall ensure the preservation of the evidence.

TEX.CODE CRIM. PROC. ANN. art. 38.39(a) (Vernon Supp.2003). This requirement applies to evidence that (1) was in possession of the State during the prosecution of the case, and (2) at the time of conviction was known to contain biological material that, if subjected to scientific testing, would more likely than not establish the identity of the person committing the offense or exclude a person from the group of persons who could have committed the of-

fense. TEX.CODE CRIM. PROC. ANN. art. 38.39(b).

■ The State contends that Article 38.39 does not apply to Johnston's case because he was tried and convicted before the effective date of the Act. Johnston was convicted June 2, 2000. Article 38.39 became effective April 5, 2001. *See* Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 6, 2001 Tex. Gen. Laws 2, 5. But Article 38.39 contemplates the preservation of evidence for future trials. It became effective before the evidence in the present case was destroyed, which the trial court found occurred on or about June 15, 2001.

■ Laws that do not amend substantive law by defining criminal acts or providing penalties are procedural in nature. *Ex parte Johnson,* 697 S.W.2d 605, 607 (Tex.Crim.App.1985) (orig.proceeding). "Procedure" refers to changes in the process by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes. *Ex parte Scales,* 853 S.W.2d 586, 588 (Tex.Crim.App.1993) (orig.proceeding) (quoting *Collins v. Youngblood,* 497 U.S. 37, 45–46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). Procedural statutes control pending litigation from their effective date, absent an express provision to the contrary. *Johnson,* 697 S.W.2d at 607–08.

In *Johnson,* for instance, the petitioner sought a post-conviction writ of habeas corpus, contending his conviction for aggravated robbery was void because the jury assessed a fine in addition to a term of imprisonment. *Id.* at 606. At the time, the law did not authorize assessment of a fine for a defendant convicted as a repeat or habitual offender. *Id.* (citing *Bogany v. State,* 661 S.W.2d 957 (Tex.Crim.App. 1983), *superseded by statute as stated in, Ex parte Youngblood,* 698 S.W.2d 671, 672 (Tex.Crim.App.1985)). Such a sentence was void and could not be reformed; a

new trial was the only remedy. *Johnson,* 697 S.W.2d at 607.

The court noted, however, that after the petitioner's conviction the Legislature changed the statute to allow an appellate court to reform the judgment. *Id.* (citing TEX.CODE CRIM. PROC. ANN. art. 37.10). Because this statute was procedural, the court held it applied to the petitioner's case, meaning the court could reform the judgment to delete the fine. *Id.* at 608.

Johnston is in substantially the same situation. Like the petitioner in *Johnson,* Johnston was convicted at a time when one set of procedural rules prevailed (i.e., those governing the preservation of evidence after a conviction). Like the petitioner in *Johnson,* Johnston sought a remedy via a post-conviction proceeding. The petitioner in *Johnson* could not obtain the remedy available when he was convicted (i.e., a new trial) because the Legislature had changed the procedural rules to allow a different remedy.

There can be little question that Article 38.39 is a procedural statute. When Johnston was convicted, the State could have destroyed the evidence in the manner then authorized by law. But when the Legislature added Article 38.39, the evidence, which was not yet destroyed, had to be preserved according to the statute's terms. We conclude, therefore, the trial court erred to the extent it concluded Article 38.39 did not apply to Johnston's case because it did not become effective until after Johnston's conviction.

■ However, the trial court could have concluded that Article 38.39 did not apply to Johnston's case because, at the time of Johnston's conviction, the evidence was not known to contain biological material that, if subjected to scientific testing, would more likely than not establish the identity of the person committing the offense or exclude a person from the group of persons who could have committed the of-

fense. *See* TEX.CODE CRIM. PROC. ANN. art. 38.39(b)(2). The trial court found that at no time did any party request the evidence be subjected to DNA testing or be preserved for any type of post-conviction analysis.

Because the trial court's determination that Article 38.39 does not apply to Johnston's case was not based on the credibility and demeanor of witnesses, we review it de novo. *See Rivera,* 89 S.W.3d at 59. We hold the trial court did not err in concluding Article 38.39 did not apply to Johnston's case to the extent its conclusion was based on the theory that, at the time of his conviction, the evidence was not known to contain biological material that, if subjected to scientific testing, would more likely than not establish the identity of the person committing the offense or exclude a person from the group of persons who could have committed the offense. The record shows that neither Johnston nor the State gave any indication at his trial or immediately afterward that the evidence could or should be subjected to testing. Further, the evidence was destroyed before Johnston sought DNA testing under Chapter 64.

Johnston also challenges the trial court's conclusion that Article 38.39 does not provide him an avenue for post-conviction relief. Though we need not reach this issue in light of our holding that the trial court did not err in concluding Article 38.39 did not apply to his case, we must observe that Johnston does not offer any argument concerning the appropriate remedy if Article 38.39 did apply and the evidence had been destroyed in violation of the statute.

■ Article 38.39, itself, does not provide a remedy when the State destroys evidence without following the procedure outlined in the statute. *See Watson v. State,* 96 S.W.3d 497, 500 (Tex.App.-Amarillo 2002, pet. filed). In *Watson,* the court

of appeals held it was without jurisdiction to consider the appellant's contention that he should be released because the State failed to preserve evidence possibly containing biological material.[2] *Id.* Such a contention, the court concluded, amounted to a request for relief on habeas corpus, which it did not have jurisdiction to grant. *Id.* Therefore, to the extent Johnston seeks his release, we would have no jurisdiction to grant him that remedy. *See id.*

■ Johnston also contends the trial court erred in concluding he did not meet the requirements of Chapter 64. Article 64.03 requires a convicting court to order forensic DNA testing if (1) the convicting court finds (a) the evidence still exists, is in a condition making DNA testing possible, and has been subjected to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect; (b) identity was an issue in the case; and (2) the convicted person establishes by a preponderance of the evidence (a) that a reasonable probability exists the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing and (b) that the requested testing is not made to unreasonably delay the execution of sentence or the administration of justice. TEX.CODE CRIM. PROC. ANN. art. 64.03(a), (b) (Vernon Supp. 2003).

The trial court found that evidence possibly containing biological material had been destroyed. Deferring to this finding of historical fact, we conclude the trial court did not err in refusing to order DNA testing. Because the evidence had been destroyed, the trial court could not find, as Article 64.03(a)(1)(A) requires, that the evidence still exists, that it is in a condition

making DNA testing possible, or that it has been subjected to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A).

■ Johnston contends that the evidence was destroyed in bad faith and that there was police and prosecutorial misconduct involved. In his affidavit supporting the State's response, Harris recites that Sergeant Jimmy Steed of the Paris Police Department reported to him that all evidence from Johnston's case, including the evidence possibly containing biological material, was destroyed. He asserted the evidence was destroyed in the routine course of business along with other evidence from other cases.

The trial court found the evidence was destroyed in the regular course of business of the Paris Police Department. Deferring to this finding of historical fact, we conclude the trial court did not err in finding the State did not act in bad faith.

Because the requirements of Article 64.03(a)(1)(A) cannot be met, we need not consider Johnston's other issues, in which he contends the trial court erred in finding he did not meet the requirements of Article 64.03(a)(1)(B) and Article 64.03(a)(2)(A) and (B).

We affirm the judgment.

**2.** It should be noted that the application of Article 38.39 was unclear in *Watson* because the evidence did not show when the evidence was lost or destroyed, i.e., before or after the effective date of the statute. *Watson v. State,* 96 S.W.3d 497, 499–500 (Tex.App.-Amarillo 2002, pet. filed).