J-S76045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ANTHONY KEFFER | |
| Appellee | No. 1389 WDA 2014 |

Appeal from the Order August 11, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001702-2009

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA and OLSON, JJ.

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 13, 2015**

The Commonwealth of Pennsylvania appeals from the order entered on August 11, 2014 granting Appellee, Anthony Keffer's, motion to dismiss the charges filed against him.  We reverse and remand.

We have previously outlined the alleged factual background as follows:

At around 6:30 p.m. on May 6, 2009, Detective Ryan Reese and another officer from the Fayette County Drug Task Force were working with a confidential informant ("CI") to investigate possible narcotics violations.  The plan was for the CI to attempt to purchase narcotics from [Appellee].

Prior to the transaction, Detective Reese searched the CI for weapons, money, and narcotics and found none.  Detective Reese gave the CI $120.00 and drove him to the South Side Grocery store on South Pittsburgh Street in Connellsville, Pennsylvania.  Detective Reese parked his vehicle in a lot across the street, where he had an unobstructed view of the CI engaging in the transaction from about 120 to 125 feet.  While the CI was outside of his car, Detective Reese constantly

observed the CI through binoculars. It was still daylight with a slight mist in the air.

From past experience, Detective Reese recognized [Appellee] standing next to the store.  The CI walked over to [Appellee] who handed the CI a small object.  [Appellee] got in his car and drove away.  Detective Reese drove over and picked up the CI.  The CI had no other interactions with anyone other than [Appellee].

The CI gave Detective Reese ten 15-milligram [] pills.  Detective Reese searched the CI: the $120.00 was gone and no other pills were on his person.

**Commonwealth v. Keffer**, 30 A.3d 548 (Pa. Super. 2011) (*per curiam*) (unpublished memorandum), at 1-3.

The relevant procedural history of this case is as follows.  On December 15, 2009, Appellee was charged via criminal information with one count of delivery of a controlled substance and one count of possession with intent to deliver a controlled substance.[1]  On September 9, 2010, Appellee was convicted of both counts and was subsequently sentenced to 27 to 54 months' imprisonment.   We affirmed the judgment of sentence.  **See generally id.**  Appellee did not seek review by our Supreme Court.  Thereafter, Appellee filed a *pro se* petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Counsel was appointed and filed an amended petition.  On October 3, 2013, the PCRA court granted the petition, and vacated Appellee's judgment of sentence, after finding that Appellee's Sixth Amendment confrontation rights had been violated.

---

[1] 35 P.S. § 780-113(a)(30).

Appellee was retried and, on May 6, 2014, a mistrial was declared after the jury deadlocked on the two charges. During the retrial, it was revealed for the first time that the Commonwealth had destroyed the ten pills found on the CI. Also during the retrial, the Commonwealth moved to amend the criminal information to change the substance with which Appellee was accused of distributing from OxyContin to oxycodone.[2] On July 25, 2014, Appellee filed a motion to dismiss the charges. He argued that the actual pills were important evidence since, at the retrial, the Commonwealth's expert and the defense expert disagreed over whether the pills were OxyContin or oxycodone. On August 11, 2014, the trial court heard argument on, and granted, the motion to dismiss. At that time, Appellee had spent 48 months in prison due to the charges in this case. This timely appeal followed.[3]

---

[2] As the Appellate Court of Illinois, Fifth District explained:

> [O]xycodone is a single-release entity, but OxyContin has a biphasic release in which the oxycodone contained therein is first released at approximately [36 minutes] after ingestion with a second release approximately 6.9 hours after ingestion. So rather than the drug level going up and coming back down fairly quickly, OxyContin goes up and the level stays up. OxyContin is oxycodone, but it differs because of the release mechanism in the pills.

*Metz v. Rosewood Care Ctr., Inc.*, 2012 IL App (5th) 090133-U, 5 (2012).

[3] On August 25, 2014, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). The Commonwealth contemporaneously filed the
*(Footnote Continued Next Page)*

The Commonwealth presents one issue for our review:

Whether the [trial c]ourt erred in granting [Appellee]'s motion to dismiss and quash the criminal complaint due to destruction of evidence when the Commonwealth can sustain its burden without the evidence with a lab report and chain of custody?

Commonwealth's Brief at 4.

The Commonwealth contends that the trial court erred in granting Appellee's motion to dismiss. In his motion to dismiss, Appellee argued that the Commonwealth violated his due process rights in failing to preserve the pills he is alleged to have delivered to the CI. "The decision to grant a pretrial motion to dismiss a criminal charge is vested in the sound discretion of the trial court and may be overturned only upon a showing of abuse of discretion or error of law." *Commonwealth v. Totaro*, 2014 WL 6790441, *2 (Pa. Super. Dec. 3, 2014) (citation omitted).

The Commonwealth argues that the trial court abused its discretion in dismissing the charges filed against Appellee. The Commonwealth contends that it did not act in bad faith by destroying the pills because Appellee had been convicted and his judgment of sentence was affirmed on appeal. It further contends that the evidence was not materially exculpable and that the conflicting testimony between the two experts went to the weight of the evidence, not its sufficiency. Therefore, the Commonwealth argues that the

*(Footnote Continued)* —————————

concise statement with its notice of appeal. On September 3, 2014, the trial court issued its Rule 1925(a) opinion. The Commonwealth's lone issue on appeal was included in its concise statement.

trial court abused its discretion in dismissing the charges filed against Appellee.

Appellee, on the other hand, argues that we must affirm the trial court's order dismissing the charges against him. Specifically, Appellee argues that the destruction of this evidence precluded testing to determine whether the pills were exculpatory. Without the opportunity to test these pills, Appellee complains that the Commonwealth deprived him of the chance to exonerate himself, especially in view of the Commonwealth's last minute amendment of the criminal information.

Our Supreme Court summarized the relevant legal principles that govern a prosecutor's obligation to avoid suppression of exculpatory evidence consistent with the Due Process Clause of the U.S. Constitution, as interpreted in ***Brady v. Maryland***, 373 U.S. 83 (1963). Our Supreme Court explained:

> In ***Brady***, the [Supreme Court of the United States] held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. This Court has held that to prove a ***Brady*** violation, the defendant has the burden of demonstrating that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant. Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. Further, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Koehler***, 36 A.3d 121, 133 (Pa. 2012) (internal quotation marks and citations omitted).

A different rule applies where the Commonwealth fails to preserve evidence that is **potentially useful**, as opposed to materially exculpatory. In cases where the prosecution has discarded potentially useful evidence, a due process violation occurs only where the Commonwealth's failure to preserve was done in bad faith, regardless of the centrality of the evidence for the prosecution or defense and regardless of whether the evidence was introduced at trial. ***Commonwealth v. Snyder***, 963 A.2d 396, 404 (Pa. 2009). Where the constitutional right to preservation of evidence is at issue, the Supreme Court of the United States has distinguished "material exculpatory evidence" from "potentially useful evidence" as follows:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in ***Brady,*** makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that **it could have been subjected to tests, the results of which might have exonerated the defendant** [,*i.e.* so-called "potentially useful evidence"].

***Arizona v. Youngblood***, 488 U.S. 51, 57 (1988) (emphasis added).[4] Bad faith is shown where evidence is discarded under circumstances "in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." ***See id***. at 58.

The trial court in this case found that the pills were potentially useful evidence and not materially exculpatory evidence. ***See*** Trial Court Opinion, 9/3/14, at 3. The trial court found, however, that the Commonwealth had acted in bad faith. ***See id.*** Specifically, it held "that the *prima facie* showing of bad faith on the part of the Commonwealth ha[d] been established, since the Commonwealth was the party in control of, and admittedly responsible for, the destruction of the physical evidence." ***Id.***

We conclude that the trial court abused its discretion in finding that Appellee had demonstrated bad faith on the part of Commonwealth. The Commonwealth is **always** the party that controls physical evidence relating to criminal prosecutions. Hence, under the trial court's rationale, any destruction of evidence in the possession of the Commonwealth rises to the level of bad faith. Such a rule impermissibly expands a defendant's right to preservation of potentially useful evidence as explained in ***Youngblood***.

---

[4] ***Youngblood*** dealt with the destruction of evidence prior to trial. This case is different in that the evidence was destroyed after Appellee was found guilty and his sentence affirmed on appeal. Courts have, however, extended the ***Youngblood*** bad faith requirement to cases in which evidence was destroyed after trial. ***See Illinois v. Barksdale***, 762 N.E.2d 669, 683 (Ill. App. Ct. 2001).

Cases from this Court, our Supreme Court, and the Supreme Court of the United States illustrate the point that the mere destruction of evidence in the possession of the Commonwealth, without more, does not necessarily rise to the level of bad faith.

In **Commonwealth v. Free**, 902 A.2d 565, 566 (Pa. Super. 2006), dozens of marijuana plants were seized and the defendant was charged with various drug offenses. Six months after the plants were confiscated, the trial court signed an order permitting a defense expert to examine the plants. **Id.** at 567. The day after that order was signed, the police destroyed the plants pursuant to a court order that had been issued months earlier. **Id.** Free moved to dismiss the charges, arguing the Commonwealth violated his right to due process by destroying the plants prior to examination by his expert. **Id.** The trial court granted the motion.

On appeal, this Court reversed. **See id.** at 566. This Court held that the police did not act in bad faith as they had acted in conformity with a department policy to destroy such drugs. **Id.** at 572-573. Furthermore, this Court held that the police department's alternative to keeping the plants, having a chemist perform tests on the plants and take photographs, was reasonable. **Id.** at 573. This Court concluded that the police did not act in a calculated manner to circumvent disclosure requirements. **Id.**

There is less evidence of bad faith in the case at bar than there was in **Free**. Specifically, the police in the case at bar kept the drugs through

- 8 -

Appellee's first trial and ensuing appellate litigation. In **Free**, the plants were destroyed prior to Free's first trial. Furthermore, there was no order in place in the case at bar to permit Appellee's expert to examine the pills at the time of destruction like there was in **Free**.

In **Snyder**, our Supreme Court held that it is very difficult to find bad faith when evidence is destroyed pursuant to a standard policy. **Snyder**, 963 A.2d at 406, *citing* **United States v. Beckstead**, 500 F.3d 1154, 1159-1160 (10th Cir. 2007). Our Supreme Court went on to say that even if evidence is destroyed outside of standard practice, it is not *ipso facto* destroyed in bad faith. **Id.** Ultimately, our Supreme Court held that the destruction of evidence was not in bad faith as it appeared to have been done pursuant to a standard policy. **Id.**

In this case, there is no evidence of whether the destruction occurred pursuant to a standard policy or if the destruction occurred outside of a standard policy. Even if the evidence were destroyed outside of a standard policy, however, it was not done in bad faith. The Commonwealth kept the pills until Appellee's judgment of sentence became final. It then believed that the pills no longer needed to be retained.

In **Illinois v. Fisher**, the defendant was arrested in 1988 for possession of cocaine. 540 U.S. 544, 545 (2004). Prior to trial, he fled to avoid the charges. **Id.** In 1999, the police destroyed the cocaine seized during the traffic stop despite the fact that Fisher had not yet been tried for

the crime and there was a pending discovery request from defense counsel to examine the drugs. *Id.* at 546. The Supreme Court of the United States held that such evidence was plainly potentially useful evidence under *Youngblood*. *Id.* at 548. Even though examination of the substance may have been Fisher's only path to acquittal, he was still required to prove bad faith in order to have the charges dismissed. *Id.* at 548-549.

*Fisher* lends further support to the conclusion that the pills at issue in this case were potentially useful evidence and not materially exculpatory evidence. Moreover, *Fisher* confirms that it is not axiomatic that police acted in bad faith in destroying evidence merely because a trial has not occurred, and a discovery request is pending. Instead, the defendant is required to present some evidence that the Commonwealth acted with bad faith other than the mere fact that the evidence was in the possession of the Commonwealth. In this case, the record does not support the finding that Appellee came forth with such evidence. To the contrary, the only evidence presented was that the evidence was in the possession of the Commonwealth and had been destroyed.

We also find instructive decisions from other jurisdictions in which courts have determined that the destruction of evidence after a conviction became final did not rise to the level of bad faith. *See Hubanks v. Frank*, 392 F.3d 926, 930–931 (7th Cir. 2004) (destruction of evidence 15 months after trial was not done in bad faith); *Lovitt v. Warden*, 585 S.E.2d 801,

815–816 (Va. 2003) (destruction of DNA evidence after capital murder conviction was not done in bad faith); *Johnston v. Texas*, 99 S.W.3d 698, 703 (Tex. App. 2003) (destruction of evidence after conviction affirmed on appeal was not done in bad faith).

For these reasons, we agree with the trial court that the pills were potentially useful - and not materially exculpatory. We conclude, however, that Appellee failed to prove that the Commonwealth destroyed the pills in bad faith. Accordingly, we conclude that the trial court abused its discretion in granting Appellee's motion to dismiss the charges. The prosecution and the defense both had an opportunity, prior to Appellee's first trial, to look at and test the pills in this case. Now that the pills have been destroyed, it is for the jury to determine how much weight should be afforded to the testimony of the prosecution's witness(es) regarding the chemical composition of the pills. We therefore reverse the trial court's order and remand for further proceedings consistent with this memorandum.[5]

Order reversed. Case remanded. Jurisdiction relinquished.

---

[5] We note the observations of the trial court concerning the continued pursuit of this matter even though Appellee has spent more time incarcerated for this crime than he would likely receive if reconvicted and resentenced. *See* N.T., 8/11/14, at 7. It is, however, not the duty of the trial court, or this Court, to interfere with the prosecutor's exercise of discretion. *See In re Private Criminal Complaints of Rafferty*, 969 A.2d 578, 582 (Pa. Super. 2009) (a court may only interfere with exercise of prosecutorial discretion where the prosecutor's decision is "patently discriminatory, arbitrary[,] or pretextual").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015