

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0861-20

---

### THE STATE OF TEXAS

**v.**

### JASON DEAN HUNTER, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### COMAL COUNTY

---

**YEARY, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

Does a person commit the offense of solicitation of capital murder when he threatens

to harm or kill a pregnant woman if she does not cause the death of her own unborn child?

In this case, the Appellee was charged with, among other things, soliciting the mother of

what may have been his own unborn child to "kill it." The court of appeals' published

opinion upheld the trial court's decision to dismiss that charge from the indictment on the

ground that it did not allege an offense under Texas law. But because the court of appeals'

opinion appears to (1) disregard the plain language of Penal Code Section 19.06, (2)

conflict with our own precedent, and (3) improperly impede the "no defense" provision found in Penal Code Section 15.03(c), I would grant discretionary review and entertain arguments from the parties concerning the court of appeals' decision.

## I. BACKGROUND

Count I in Appellee's indictment alleged that he committed the charged offense by sending a series of text messages to E.E., the mother of the unborn child, and it contains certain excerpts from those texts. As quoted by the court of appeals, Count I of the indictment states:

### COUNT I

THE GRAND JURORS, duly selected, organized, sworn and empaneled as such for the County of Comal, State of Texas, at the July term, A.D., 2016, of the 207TH Judicial District Court for said County, upon their oaths present in and to said Court that in the county and state aforesaid, and before the presentment of this indictment, on or about the 20th day of October, 2015, JASON DEAN HUNTER, hereinafter styled Defendant, did then and there, with intent that a capital felony be committed, to-wit: the murder of the unborn child of [E.E.], a child under the age of ten years of age, did request, command or attempt to induce the said [E.E.] to engage in specific conduct to cause the death of said unborn child, to-wit: the said JASON DEAN HUNTER by text messages stated:

"I don't have a kid mother f—r you have a kid try and give birth to it see what happens";

"so I will see you soon mother f—r . . . when you turn around one night when its really dark I'm going to be right there . . . Well [E.] like I said to you on the phone I'm going to enjoy doing it to you and you have no idea what I am. Anyway I sent your mother news of you and your text talking about the baby so she knows you're pregnant have a nice evening bitch. And you and your family are not raising this kid guaranteed. . . . if you had any clue does monsters under your f—g bed would look like f—g daisies if you knew what I'm capable of. [E.] you and never give birth I promise you";

"I'll cut that f—g baby i love you I'll put in a f—g blender important your f—g throat if you f—g lied to me again you f—g piece of shit"; or

"Hey I told you not having that kid and I meant it bitch. You are not allowed to have my child it's not going to happen get used to that fact now. I will go to the ends of this f—g earth to make sure you don't";

"I want to make this loud and clear your life is going to be miserable I do not want you raising that kid with his f—g nose turned up the way yours is it's not going to happen in the only way that would be assure if if you didn't have that kid . . . Its my baby as well and yes you are going to kill it I promise you you won't make it through a full term";

"quit trying to buy time [E.] . . . And time is running out a lot quicker than you think it is . . . come one [E.] it's just a little maggot inside of you. I know you are a sloth also but get up. While you're sleeping I'll be busy . . . You can go get it done or I will have you do it yourself you pick . . . Since you have chosen not to take me seriously the price for that will be paid shortly and this will be just a taste of what is to come";

"It's just a matter of a little pill right now not too much longer it's a matter of putting a shop vac up your c—t and sucking the body parts out . . . Time is of the essence love";

"I assure you your family will not be raising our child . . . your own hand [E.] your own hand think about it . . . There's not going to be a child [E.] . . . Cuz I'm going to spend a lot of time in jail for what I'm going to do"; or

"Oh you mother f—s think you going to play me I will put every one of your f—g throats. You're going to get it now bitch you're dead . . . affecting what I'm not going to let you have the kid . . . It takes one half second to slash a throat didn't f—k with me."

*State v. Hunter*, 606 S.W.3d 836, 838–39 (Tex. App.—Austin 2020) (spelling, punctuation, typographical errors, and expletives in original). Appellee filed a motion to quash Count I from his indictment, contending that it did not allege an offense under Texas law. The trial court agreed, and it quashed that Count from the indictment. The State appealed.

The court of appeals noted that Chapter 19 of the Texas Penal Code, defining criminal homicide offenses, is subject to a limitation. *Id.* at 842. Specifically, Section 19.06, in that chapter, provides:

This chapter *does not apply* to the death of an unborn child if the conduct charged is:

> (1) conduct committed by the mother of the unborn child;
>
> (2) a lawful medical procedure performed by a physician or other licensed health care provider with the requisite consent, if the death of the unborn child was the intended result of the procedure;
>
> (3) a lawful medical procedure performed by a physician or other licensed health care provider with the requisite consent as part of an assisted reproduction as defined by Section 160.102, Family Code; or
>
> (4) the dispensation of a drug in accordance with law or administration of a drug prescribed in accordance with law.

TEX. PENAL CODE § 19.06 (emphasis added). Focusing on subsection (1) of that law, the court of appeals observed that, "under the plain language of subsection 19.06(1), if an unborn child's death is charged to conduct committed by that unborn child's mother, the mother's conduct does not constitute a criminal offense under chapter 19." *Hunter*, 606 S.W.3d at 843. It further stated that, "under subsection 19.06(1), the conduct solicited from E.E. as to her unborn child would not have been a criminal homicide offense because the Penal Code chapter defining homicide offenses specifically excludes application to her conduct." *Id.* The court of appeals summed up its reasoning in this way:

> Based on current Texas law, we conclude that E.E., as the mother of her unborn child, would not have committed a homicide offense under the Penal Code if the death of her unborn child had been charged to E.E.'s own conduct. . . . And because such conduct by E.E. would not constitute a felony (or any offense in the chapter defining homicide offenses), [Appellee] could not have solicited E.E. to commit conduct toward her unborn child that would constitute capital murder.

*Id.* at 847.

The State has now petitioned this Court to review the court of appeals' decision. In my view, there are serious reasons to question whether the court of appeals' analysis in this case is correct. Also, and perhaps precipitating the potential errors in its analysis, the court of appeals' decision appears to conflict with a relatively recent decision by this Court. And the court of appeals decision appears to impede the operation of a "no defense" clause in the solicitation statute. I would therefore grant the State's petition for review.

## II. DISCUSSION

This case does not involve a charge of any kind against a mother for causing the death of her unborn child. The court of appeals' opinion also reveals that the mother described in the indictment in this case did not abort her child. *State v. Hunter*, 606 S.W.3d at 839 n.3. This case is instead about whether a person who is *not the mother* of that child has the unfettered right to solicit another person (including its mother) to cause its death.

Some background on Texas statutory law surrounding homicide offenses may be helpful to a clearer understanding of the issues involved in this case. Causing the death of an unborn child *is* capital murder in this State. *See* TEX. PENAL CODE § 19.03(a)(8); TEX. PENAL CODE § 1.07(a)(26); *Lawrence v. State*, 240 S.W.3d 912 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1007 (2008). Under our law, an "individual" (who is capable of being the victim of a homicide) is defined as "a human being who is alive, *including an unborn child* at every stage of gestation from fertilization until birth." TEX. PENAL CODE § 1.07(26) (emphasis added).

A person commits murder "if he [among other possibilities]: . . . intentionally or knowingly causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1). A person commits capital murder "if the person commits murder" and "the person murders an

individual under 10 years of age." TEX. PENAL CODE § 19.03(a)(8). Capital murder is a capital felony. TEX. PENAL CODE § 19.03(b). And a person commits criminal solicitation of capital murder if, "with intent that a capital [murder] . . . be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission." TEX. PENAL CODE § 15.03(a).

1. **According to Its Own Terms, Section 19.06 of the Penal Code "Does Not [Appear to] Apply" to Appellee or to Conduct Committed by Him.**

The court of appeals decided that the trial court did not err by dismissing Count I from the indictment against Appellee based on Section 19.06(1) of our Penal Code. *Hunter*, 606 S.W.3d at 842. Section 19.06(1) explains that Chapter 19 of the Penal Code (defining homicide offenses) "does not apply" to the death of an unborn child "*if the conduct charged is*: (1) conduct committed by the mother of the unborn child." TEX. PENAL CODE § 19.06(1) (emphasis added). The court of appeals understood that language plainly to mean that, "if an unborn child's death is charged to conduct committed by that unborn child's mother, the mother's conduct does not constitute a criminal offense under chapter 19 [of the Texas Penal Code]." *Hunter*, 606 S.W.3d at 843. On that basis, it concluded that Appellee could not have solicited a capital murder by commanding a mother to cause the death of her own unborn child. *See id*. at 847 ("[B]ecause such conduct by E.E. would not constitute a felony (or any offense in the chapter defining homicide offenses), Hunter could not have solicited E.E. to commit conduct toward her unborn child that would constitute capital murder.").

But according to its own terms, Section 19.06(1) does not appear to apply to any case unless "*the conduct charged is*: (1) conduct committed by the mother of the unborn

child." TEX. PENAL CODE § 19.06(1) (emphasis added). Count I of the indictment in this case did not charge conduct committed by the mother of the unborn child. The *conduct* it *charged* was conduct alleged to have been committed by Appellee. Thus, upon a basic examination of the charging instrument in relation to the plain language of Section 19.06, the non-applicability provision relied upon by Appellee, and ultimately by the court of appeals, does not appear to apply to Appellee's case.

The court of appeals conclusion would necessarily mean that, even when the conduct charged in a given case is not conduct committed by the mother of an unborn child, a mother's conduct against her own unborn child may not be deemed to violate any provisions found in Chapter 19 of the Penal Code. But its reading of Section 19.06(1) takes the language of that provision beyond its plain import. Section 19.06(1), by its own terms, has no application in cases in which a mother's conduct is not *charged*. Consistent with Section 19.06, then, a mother's conduct *can* still violate a homicide law, as defined, but because of Section 19.06, her conduct may not result in the imposition of criminal responsibility against her. Section 19.06(1) only prohibits the application of the other provisions of Chapter 19 of the Penal Code when the mother of an unborn child is *charged* with committing conduct that caused the death of that child. And that has not happened here.

The non-applicability provision in Section 19.06 also contains provisions that apply in three other very specific situations involving physicians and other licensed health care providers who act with "the requisite consent," and involving those who dispense or administer drugs "in accordance with the law." TEX. PENAL CODE § 19.06(2)–(4). The inclusion of these additional, very specific, provisions suggests that the non-applicability

provisions are to be read to operate only when each of the specific elements of each provision are fulfilled. So, for example, Subsections (2) or (3) would likely *not* apply if a physician or other licensed health care provider performed "a lawful medical procedure" but performed it *without* "the requisite consent." *See* TEX. PENAL CODE § 19.06(2) & (3). Similarly, Subsection (4) would likely *not* apply if a drug was dispensed but not "in accordance with the law." *See* TEX. PENAL CODE § 19.06(4). And the fact that some subsections in Section 19.06 have specific applicability to conduct by persons other than the mother of the unborn child suggests that perhaps *only* those other persons named in the statute are provided protection from prosecution by that statute. But the court of appeals' opinion has now extended the protections afforded by Section 19.06 beyond the persons specifically identified by that law, and has extended the scope of the "does not apply" language from the homicide offenses defined in Chapter 19 of the Penal Code to the solicitation offense defined in Chapter 15 of the Penal Code (when the person solicited is the mother of an unborn child and when the intended victim is her unborn child).

In my view, as I address in more detail in the next section of this opinion, the court of appeals' opinion may well have misconstrued the breadth of Section 19.06 by treating it as a kind of *exception* to homicide offenses. *See* TEX. PENAL CODE § 2.02(a) ("An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . .'"). In other words, the court of appeals appears to have understood Section 19.06 literally to define out of our homicide laws conduct that would otherwise fit within the definitions of those offenses. And given the gravity of its potential misconstruction of our homicide laws, especially in a published opinion, this Court should grant review to ensure that those laws continue to be understood uniformly and properly.

**2. The Court of Appeals' Opinion Appears to Conflict with This Court's Precedents.**

The court of appeals concluded, based on the "does not apply" language in Section 19.06, that "the Penal Code chapter defining homicide offenses specifically *excludes* application to [the mother's] conduct." *Hunter*, 606 S.W.3d at 843 (emphasis added). Understanding Section 19.06 in this way, the court of appeals seems to have treated its provisions as *exceptions* to homicide offenses. But the court of appeals may well have been mistaken to do so because a majority of this Court has already decided, in another opinion, that provisions like the one found in Section 19.06 do not establish exceptions to offenses.

The elements of an offense include: "(A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense."[1] TEX. PENAL CODE § 1.07(22). The negation of an exception to an offense is therefore an element of an offense, which must be pled and proved by the State beyond a reasonable doubt before it may lawfully obtain a judgment of conviction. TEX. PENAL CODE § 2.02(b). In any case in which the State fails to plead and prove the absence of an exception to an offense, it has failed to prove the offense as it is defined by state law. In effect, an exception to an offense alters the actual definition of the offense to exclude circumstances in which the exception applies—such that conduct committed within the parameters of the exception falls outside the definition of the offense and therefore cannot be said to violate its terms.

This is how the court of appeals treated Section 19.06: as an exception. Having understood Section 19.06(1) as an exception, the court of appeals concluded that the

---

[1] *Celis v. State*, 416 S.W.3d 419, 435 (Tex. Crim. App. 2013) (Keller, P.J., concurring) (explaining that "'required culpability' must refer to the defendant's culpable mental state, and not to his guilt of the offense as a whole").

conduct of a mother who causes the death of her own unborn child does not even fit within the definition of the homicide offenses defined in Chapter 19 of the Penal Code. But, in *Baumgart v. State*, the Court made clear that a statute very much like the statute defined in Penal Code Section 19.06 *did not* constitute an "exception" under our law. *See* 512 S.W.3d 335, 344 (Tex. Crim. App. 2017).

The Court in *Baumgart* examined the nature of "does not apply" provisions found in the Private Security Act, in the Occupations Code, which are very similar to those contained in Section 19.06 of the Penal Code. *Id.* at 337. The Court explained that it had to determine whether these kinds of "non-applicability provisions" were exceptions that must be negated by the State in its charging instrument or whether, instead, they were defenses. The Court ultimately determined that statutory language providing that a penal law "does not apply" under certain specified circumstances does not constitute an exception to an offense at all, but a defense, and that its effect is therefore governed by Section 2.03 of the Penal Code. *See id.* at 344 ("If a defensive matter is not plainly labeled as an exception, defense, or an affirmative defense, then it is a defense. So, if a defensive matter does not use the exact wording outlined in § 2.02(a) (or the exact wording outlined in § 2.04(a)), then it is not an exception (or affirmative defense) but is a defense that is governed by § 2.03[.]"). The Court's opinion in *Baumgart* also recognized that several "other court-of-appeals cases have construed similar Penal Code provisions containing 'does not apply' language [like the language in Section 19.06] as creating defenses under § 2.03(e)." *Id*. at 345.[2]

---

[2] Footnote 67 in the Court's opinion in *Baumgart* listed the following examples: *Smith v. State*, 959 S.W.2d 1, 22 n.35 (Tex. App.—Waco 1997, pet. ref'd) (exemptions under Penal Code

This Court observed in *Baumgart* that "[t]he legislature has shown that it knows how to create exceptions in the Penal Code that conform exactly to the labeling requirement in § 2.02(a)." *Id.* at 345–46. "[T]here are times[,]" said the Court, "when the legislature has mandated strict compliance with a statutory provision[,]" and "[t]his is one of those times." *Id.* at 344. It continued, "[i]n saying that an exception is 'labeled' with a particular phrase, and in placing that particular phrase in quotation marks, the legislature has decreed that an exception exists *only* when that exact phrase is used." *Id.* (emphasis added).

According to our own precedent, then, Section 19.06 of our Penal Code seems to provide a defense, not an exception. The negation of a defense is *not* an element of an offense. TEX. PENAL CODE § 1.07(22). A "prosecuting attorney is not required to negate the existence of a defense in the accusation charging commission of [an] offense." TEX. PENAL CODE § 2.03(b). And even when a defense is raised by the evidence in a trial, the prosecutor assumes no burden *of production* to refute it, *see Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) ("That is not a burden of *production*, i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt."), although the prosecutor does thereafter bear a burden of persuasion that the defense does not apply, and the court must instruct the jury "that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE § 2.03(c). In this way, a defense can allow an

---

§ 36.10 to offenses involving gifts to public servants); *Borkowicz v. State*, 802 S.W.2d 115, 116–17 (Tex. App.—Texarkana 1990, no pet.) (exemptions under Penal Code § 43.23, obscenity offense); *Johnson v. State*, 760 S.W.2d 797, 798–99 (Tex. App.—Dallas 1988, no pet.) (same).

accused to avoid criminal responsibility for conduct that otherwise meets the statutory definition of an offense.

Perhaps we should consider granting review here, or at some point in the future, to determine what the difference in effect is between an exception and a defense. Does the existence of a defense mean, as I have posited, that an offense may have occurred but that the accused may not be held criminally responsible? Or does the existence of a defense mean that an offense has not been committed, in the same way as when an exception has not been negated? If a defense merely permits the avoidance of criminal responsibility by a particular person, even when evidence otherwise demonstrates that the definition of an offense has been satisfied, while an exception establishes circumstances when an offense has definitively not occurred, a decision by this Court to explain that would be helpful to the jurisprudence of the State. And it would also be helpful to explain if that assessment is incorrect.

When a charging instrument alleges that "conduct committed by the mother of [an] unborn child" has caused the death of that child, it is clear that the mother of that child may *not* be held criminally responsible for a homicide. TEX. PENAL CODE § 19.06(1). But others (who are not protected by Section 19.06) might still, at least arguably, be held criminally responsible. This Court has upheld that notion in cases where an accused person directly engages in conduct that causes the death of an unborn child. And perhaps the Court ought to hold that it is also true, in a case like this one, in which the accused is alleged to have solicited another to cause an unborn child's death, especially when the mother of the unborn child does not will it, and even when her own will might have been overborne by a command or a threat. *See e.g., Lawrence v. State*, 240 S.W.3d 912, 917 (Tex. Crim. App.

2007), cert. denied, 553 U.S. 1007 (2008) (explaining that *Roe v. Wade*, 410 U.S. 113 (1973), has no application "to a statute that prohibits a third party from causing the death of [a] woman's unborn child against her will").

### 3. The "No Defense" Provisions in Section 15.03 May Also Be Improperly Impeded by the Court of Appeals' Opinion

Section 15.03(c) of the Penal Code provides that "[i]t is no defense to prosecution under this section that: (1) the person solicited is not criminally responsible for the felony solicited." TEX. PENAL CODE § 15.03(c). This language seems to mirror the circumstances that were raised by the indictment in this case. The indictment alleges that Appellee solicited the mother of an unborn child to cause that child's death. And Section 19.06(1) of the Penal Code prevents the imposition of criminal responsibility on the mother when her conduct causes the unborn child's death. TEX. PENAL CODE § 19.06(1). Thus, one might forgive the State for assuming its prosecution was valid given the "no defense" provision found in Section 15.03(c).

Again, causing the death of an unborn child *is* capital murder in this State. *See* TEX. PENAL CODE § 19.03(a)(8); TEX. PENAL CODE § 1.07(a)(26). The laws making it so may not be enforced against a mother of an unborn child who causes its death, or against certain specific others, in certain specific circumstances. TEX. PENAL CODE § 19.06. If the "no defense" provision in Section 15.03(c)(1) does not cover this exact situation, then what does it cover?

The court of appeals' opinion rejected the State's argument that the "no defense to prosecution" provisions in Penal Code Section 15.03 permitted Appellee's prosecution for solicitation despite the existence of Section 19.06. The State argued that Appellee "could

not rely on the fact that E.E. could not be prosecuted . . . to bar his [own] prosecution." *Hunter*, 606 S.W.3d at 843. Focusing on the phrase "the felony solicited" in Section 15.03(c)(1), the court of appeals concluded that the State could not rely on the "no defense to prosecution" provisions because the mother's conduct, if she had gone through with killing her own unborn child, "would not have been a felony, or any homicide crime[.]" *Id*. at 843 (emphasis added).[3]

The court of appeals may have been correct if the "does not apply" language in Section 19.06 has the effect of an exception, which defines its circumstances out of homicide offenses entirely. But its analysis could also be flawed since, again, this Court has previously treated provisions like Penal Code Section 19.06 as mere defenses. I reiterate here that I do not mean at all to suggest that our precedent in this area means that a mother who willfully causes the death of her own unborn child may be successfully prosecuted or convicted of a homicide offense for that conduct in Texas, under our current law. But the fact that a specific person (the mother of an unborn child) may not be successfully prosecuted or otherwise held criminally responsible under our law for conduct constituting the elements contained within the definition of an offense (which seems to be

---

[3] On appeal, the State broadened its argument to include subsections (2) and (3) of Section 15.03(c), which similarly provide that it is no defense to prosecution that: "(2) the person solicited has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution; [or that] (3) the actor belongs to a class of persons that by definition of the felony solicited is legally incapable of committing the offense in an individual capacity[.]" TEXAS PENAL CODE § 15.03(c)(2), (3). The court of appeals addressed this broader argument, "[t]o the extent that the State's additional arguments [were] before [it]," and noted "that every subsection of 15.03(c) refers to 'the felony solicited' or to a prosecution for a criminal 'offense.' *Id*. § 15.03(c)." *Hunter*, 606 S.W.3d at 844 n.6.

the effect of a defense) does not necessarily mean that her conduct may not still fall *within the definition* of an offense, even a felony offense, as described by state law. *See, e.g.*, *Pesch v. State*, 524 S.W.2d 299, 301 (Tex. Crim. App. 1975) ("Insanity is a defense that excuses a defendant from punishment because of his state of mind at the time of the commission of the act. Article 34, V.A.P.C. (1925), states: 'No act done in a state of insanity can be punished as an offense.' See 16 Tex.Jur.2d, Criminal Law, Section 91, et seq. It does not mean that the conduct (if the accused is sane) does not constitute an offense. Appellant's conduct would still constitute the offense of murder under the new code.").

If our decision in *Baumgart* is correct, and if there is not some rational and proper way to distinguish it, then, when Section 19.06(1) explains that our State's homicide laws "do[] not apply," it only means that they *may not be enforced to impose criminal responsibility against* the mother of an unborn child, should *she* be charged with engaging in conduct that causes the death of her own unborn child. And if Section 19.06(1) is only a prohibition on enforcement of homicide laws against such a mother, the court of appeals opinion may have misconstrued the "no defense" provision found in Section 15.03(c)(1) of our Penal Code.

Perhaps the plain language of Section 15.03(a) should be read instead, in light of Section 15.03(c)(1), to extend to cases in which the conduct of the actor solicited would have violated the terms of Section 15.03(a) as defined, even when that solicited actor cannot be held personally criminally responsible for it. This construction would also be consistent with what appears to me to be at least one of the obvious purposes of the Criminal Solicitation of Capital or First-Degree Felony statute: to permit imposition of criminal responsibility against a person who, seeking to avoid criminal responsibility for

committing a criminal act on his or her own, instead seeks out some other person (including a not criminally responsible person) to commit the offense on his or her behalf.

### III. CONCLUSION

It appears that the court of appeals relied upon Penal Code Section 19.06(1) when the plain language of that section makes clear that it does not apply to this case. Also, because it appears to have treated Section 19.06 as an exception to homicide offenses, the court of appeals' opinion in this case is seemingly in conflict with this Court's opinion in *Baumgart*. If the court of appeals' decision is correct for some yet unexplained reason, or if this Court's precedent as announced in *Baumgart* is inapplicable to a case such as this one, this Court should grant review to say why.[4] At a minimum, the concerns that I have expressed here are serious enough that a closer examination of these issues should be made, on our own motion if need be.[5] Or the Court could simply vacate and remand the case to

---

[4] One of the concurrences contends that "the correct resolution [of this case] is so obvious that we need not grant review." Keller, P.J., Concurring, at 1. But to reach the conclusion that the correct resolution is "obvious," that opinion relies on a distinction between *offense-negating defenses* and *responsibility-negating affirmative defenses* that appears never-before to have been resorted to in any Texas appellate court opinion. If it were so "obvious," I would think it would have been discussed at some point by our appellate or high courts. Never mind that such a distinction would also appear to expand the definition of the elements of an offense in our Penal Code to include: *the negation of a defense when it is raised by the evidence*, even when our statute defining the elements of an offense does not include that. *See* Tex. Penal Code § 1.07(a)(22). And never mind that such a distinction would amend that statute by judicial fiat, instead of by legislative action. Since it does not appear that the concurrence's proposed distinction between *offense-negating defenses* and *responsibility-negating affirmative defenses* has yet been considered by our appellate or high courts in a written opinion (after briefing and argument by the parties to an appeal), I contend that its argument supports my position that review should be granted in this case.

[5] In addition to the grounds presented by the State in this case, I propose that we grant review on two additional grounds. First:

the court of appeals to permit it to consider in the first instance, on its own, how our decision in *Baumgart* should have affected its analysis in this case, if at all.

Because the Court chooses to take none of these actions, I respectfully dissent.

FILED:               June 16, 2021
PUBLISH

---

> Does the existence of a defense mean that an offense may have occurred, but that the accused may not be held criminally responsible? Or does it mean that an offense has not been committed, in the same way as when an exception has not been negated?

And second:

> Does the court of appeals' opinion conflict with this Court's opinion in *Baumgart v. State*, 512 S.W.3d 335, 344 (Tex. Crim. App. 2017), by treating Penal Code Section 19.06 as an exception to homicide prosecutions instead of as a defense to homicide prosecutions? And if so, then has that error caused the court of appeals to reach an incorrect result in this case?

*See* TEX. R. APP. P. 66.1 ("The Court of Criminal Appeals may review a court of appeals' decision in a criminal case *on its own initiative* under Rule 67 or on the petition of a party under Rule 68.") (emphasis added); TEX. R. APP. P. 67.1 ("By a vote of at least four judges, the Court of Criminal Appeals may grant review of a court of appeals' decision in a criminal case at any time before the mandate of the court of appeals issues.").