**Opinion filed June 11, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00006-CR

_____

### ANTWONE DEMONE GAINUS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 278th District Court**
**Walker County, Texas**
**Trial Court Cause No. 31,307**

### M E M O R A N D U M   O P I N I O N[1]

This appeal concerns the validity of two life sentences assessed against

Appellant, Antwone Demone Gainus, for his convictions of (1) aggravated assault

---

[1]Pursuant to Misc. Docket Order No. 24-9105 issued by the Texas Supreme Court on December 20, 2024, this appeal was transferred to us from the Tenth Court of Appeals. Therefore, as the transferee court, we must decide the issues raised in this appeal in accordance with the precedent of the Tenth Court of Appeals if its precedent conflicts with ours. *See* TEX. R. APP. P. 41.3.

against a public servant with a deadly weapon, a first-degree felony (Count One), and (2) possession of a deadly weapon in a penal institution, a third-degree felony (Count Two), each enhanced with a prior felony conviction. TEX. PENAL CODE ANN. § 22.02(a), (b)(2)(B) (West 2026), § 46.10(a), (d) (West 2011).[2]

In a single issue, Appellant contends that the trial court reversibly erred and violated the Eighth Amendment's prohibition against cruel and unusual punishment when it sentenced him, for offenses that he committed when he was seventeen, to life imprisonment for these "nonhomicide" offenses.[3] *See* U.S. CONST. amend. VIII. The State responds that the trial court's sentence of life imprisonment for Count One, which carries the possibility of parole, is not unconstitutionally cruel and unusual. The State further contends, by cross-points, which Appellant joins, that (1) the trial court's judgment of conviction for Count One should be modified to recite that the trial court did not make an enhancement finding of "true," and (2) the trial court's sentence of life imprisonment for Count Two is illegal and should be reversed, and a new punishment trial should be ordered for that offense. We affirm in part, and we reverse and remand in part.

## I. *Factual Background*

Appellant committed the above offenses when he was seventeen and while an inmate in the Institutional Division of the Texas Department of Criminal Justice

---

[2]The indictment lists Section 46.10 as the statute under which Appellant was charged for intentionally, knowingly, or recklessly possessing a deadly weapon while confined in a penal institution. PENAL § 46.10(a)(2). The trial court's judgment of conviction for Count Two erroneously recites the statute for that offense as Section 22.02, which is the aggravated assault statute. The State's brief and Appellant's reply brief reference Section 38.11. PENAL § 38.11(d)(1) (West Supp. 2025). Despite these deficiencies, the trial court's charge accurately tracks the language of Section 46.10.

[3]We note that Appellant does not contend that his sentences violate Article 1, Section 13 of the Texas constitution. *See* TEX. CONST. art. 1, § 13; *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) (holding that there is no significant difference between the Eighth Amendment's protections and those provided by Article 1, Section 13).

(TDCJ). Prison surveillance video footage where he was incarcerated captured Appellant assaulting Lieutenant Joseph Dudley, a correctional officer with TDCJ. Appellant approached Lieutenant Dudley from behind and repeatedly struck him on his head and arm with a sock that contained a fan motor. Appellant laughed after he assaulted Lieutenant Dudley. Appellant was interviewed after the assault, and he stated that he assaulted Lieutenant Dudley because he ignored Appellant; he also said that he always carried a weapon while in prison, in case he gets mad or needs it. Appellant expressed no remorse for assaulting Lieutenant Dudley and told the interviewer that he had no feelings and was "dead inside."

At trial, the investigator testified that a fan motor is a common item used by inmates within the prison system and, when placed in a sock and used to strike a person's head, it becomes a weapon and can cause death or serious bodily injury. Because of the assault, Lieutenant Dudley sustained a brain bleed and a concussion, and he developed PTSD and cognitive issues; he also underwent several surgical procedures to address his injuries.

Appellant has a lengthy criminal history as a juvenile. The State presented evidence that, when Appellant was sixteen, he was adjudicated by a juvenile court for (1) three counts of assault of a public servant, (2) possession of a prohibited item in a correctional facility, (3) taking a weapon from an employee of a correctional facility, and (4) retaliation. When Appellant was seventeen, less than two months before he assaulted Lieutenant Dudley, he committed the offense of harassment of a public servant. After the assault, Appellant committed another harassment offense, for which he was convicted and sentenced to a term of imprisonment.

A jury convicted Appellant of both charged offenses. After the jury returned its guilty verdicts and was dismissed, Appellant "created [an] altercation in the courtroom" and had to be "subdued" before the punishment phase of trial could

3

proceed. After the punishment phase concluded, the trial court sentenced Appellant to life imprisonment with the possibility of parole for each conviction. The judgment for each conviction recites that Appellant pled "not true" to an enhancement allegation, and that the trial court found the enhancement allegation to be "true."

## II. *Standard of Review*

Trial courts are afforded "a great deal of discretion" in sentencing decisions. *Renfroe v. State*, 529 S.W.3d 229, 233 (Tex. App.—Eastland 2017, pet. ref'd) (quoting *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)). Therefore, when we review a trial court's sentencing determination, we will not disturb the trial court's decision absent a showing of an abuse of discretion and harm. *Id.*

When a sentence falls within the applicable statutory range of punishment, it is generally not considered to be excessive, cruel, or unusual. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Guillory v. State*, 652 S.W.3d 923, 930 (Tex. App.—Eastland 2022, pet. ref'd). However, a person's sentence may constitute cruel and unusual punishment, despite falling within the applicable statutory range, if it is grossly disproportionate to sentences for similar offenses. *Renfroe*, 529 S.W.3d at 233 (citing *Solem v. Helm*, 463 U.S. 277, 287 (1983)); *Sneed v. State*, 406 S.W.3d 638, 643 (Tex. App.—Eastland 2013, no pet.). Nevertheless, "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)); *see Guillory*, 652 S.W.3d at 930.

To evaluate the proportionality of a sentence, the first step is to make a threshold comparison between the gravity of the offense for which the defendant was convicted, and the severity of the sentence imposed. *Simpson*, 488 S.W.3d at 322; *Renfroe*, 529 S.W.3d at 234. When we analyze the gravity of the convicted

offense, we review (1) the harm caused or threatened to the victim, (2) the culpability of the offender, and (3) the offender's criminal history. *Simpson*, 488 S.W.3d at 323; *Renfroe*, 529 S.W.3d at 234. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75 (1982).

If we do not find gross disproportionality, our analysis ends. *See Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring); *Renfroe*, 529 S.W.3d at 234 (citing *Bradfield v. State*, 42 S.W.3d 350, 353–54 (Tex. App.—Eastland 2001, pet. ref'd)). Only if the sentence imposed is grossly disproportionate to the charged offense must we then proceed to steps two and three and compare the defendant's sentence with sentences that were imposed for similar crimes in this or other jurisdictions. *Simpson*, 488 S.W.3d at 323; *Bradfield*, 42 S.W.3d at 353–54.

### III. *Analysis*

On appeal, Appellant does not challenge the sufficiency of the evidence to support his convictions. Rather, his only complaints concern the sentences imposed by the trial court.[4]

A. *Count One: Life Imprisonment with the Possibility of Parole is not Disproportionate for Appellant's Conviction for Aggravated Assault of a Public Servant*

The punishment range for a first-degree felony offense is either imprisonment for life, or for any term of not more than ninety-nine years or less than five years. PENAL § 12.32(a) (West 2019). The mandatory minimum sentence for a first-degree felony is increased to fifteen years' imprisonment if it is shown at trial that the

---

[4]Because the parties agree, as do we, that the trial court's judgment for Count Two must be reversed because an illegal sentence was imposed, we only address the propriety of the sentence that was imposed for Count One in our proportionality analysis.

defendant has previously been finally convicted of a felony offense other than a state jail felony. *Id.* § 12.42(c)(1). Thus, the sentence of life imprisonment that the trial court imposed for Count One falls within the range of punishment prescribed by the legislature for the charged offense. *Id.*

Nevertheless, Appellant contends that the sentence for Count One is grossly disproportionate because he was only seventeen at the time he committed the aggravated assault of Lieutenant Dudley. In support of his contention, Appellant relies on the Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010), which held that sixteen-year-old Graham's sentence—life imprisonment *without the possibility of parole* for a nonhomicide offense—violated the Eighth Amendment's prohibition against cruel and unusual punishment. *Graham*, 560 U.S. at 75, 82. Appellant also relies on the Court of Criminal Appeals' treatment of the Supreme Court's decision in *Miller v. Alabama*. *See Lewis v. State*, 428 S.W.3d 860, 863 (Tex. Crim. App. 2014) (citing *Miller v. Alabama*, 567 U.S. 460, 478–80 (2012)). In *Miller*, the Supreme Court held that the Eighth Amendment prohibits a sentencing scheme that mandates a sentence for juvenile offenders of life imprisonment *without the possibility of parole* without permitting individualized sentencing before imposing such a sentence. *Miller*, 567 U.S. at 479, 489; *see Graham*, 560 U.S. at 75 ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."). But *Graham* and *Miller* are inapposite.

In *Lewis*, two sixteen-year-olds were convicted of capital murder and sentenced to life imprisonment without the possibility of parole pursuant to the 2009 version of Section 12.31 of the Penal Code in effect at the time. *Lewis*, 428 S.W.3d at 861–62. After the Supreme Court decided *Miller*, the juveniles' sentences were reformed to life imprisonment *with the possibility of parole*. *Id.* at 862. Despite this,

the juvenile defendants argued that their reformed sentences were nonetheless unconstitutional because *Miller* requires individualized sentencing of juvenile offenders. *Id.* The court in *Lewis* disagreed and held that *Miller* requires individualized sentencing hearings only when a juvenile can be sentenced to life imprisonment *without* the possibility of parole. *Id.* at 862; *see Miller*, 567 U.S. at 479, 489. With the sentence reformations, and because the juvenile defendants would eventually become eligible for parole, the Court of Criminal Appeals affirmed the imposition of the reformed life-imprisonment sentences. *Lewis*, 428 S.W.3d at 865.

The Penal Code provides that a person who is seventeen or older shall be prosecuted as an adult. PENAL § 8.07(b). Further, a child—one who is ten or older but under the age of seventeen—is generally subject to the Family Code's juvenile justice provisions. *See* TEX. FAM. CODE ANN. § 51.02(2)(A) (West Supp. 2025). Here, Appellant was neither a juvenile at the time he committed the nonhomicide offenses—he was seventeen and clearly an adult for purposes of criminal prosecution—nor was he sentenced to life imprisonment *without* the possibility of parole. Because Appellant was sentenced to life imprisonment *with* the possibility of parole for Count One, his contention that this sentence is grossly disproportionate because he was seventeen at the time he committed the charged offense is unfounded.

Nevertheless, we will endeavor to analyze Appellant's sentencing complaint for Count One under the well-established standards. As we have said, the first step to evaluate the proportionality of a sentence is to make a threshold comparison between the gravity of the offense for which the defendant was convicted, and the severity of the sentence imposed. *Simpson*, 488 S.W.3d at 322; *Renfroe*, 529 S.W.3d at 234. When we analyze the gravity of the convicted offense, we review (1) the

harm caused or threatened to the victim, (2) the culpability of the offender, and (3) the offender's criminal history. *Simpson*, 488 S.W.3d at 323; *Renfroe*, 529 S.W.3d at 234. For purposes of the constitutional limitations of proportional severity, we weigh these factors against the defendant's sentence. *See Hutto*, 454 U.S. at 374–75.

The underlying circumstances, the high gravity of this offense, and the substantial harm and trauma endured by Lieutenant Dudley that resulted from Appellant's egregious and violent conduct cannot be ignored. Indeed, the harm inflicted upon Lieutenant Dudley because of Appellant's brutal and unprovoked attack was severe; he sustained serious bodily injuries—a brain bleed and a concussion, which required several surgical interventions—and long-term physical and mental harm—PTSD and cognitive issues. Further, Appellant was highly culpable. He admitted that he kept the fan motor in a sock as a weapon if he got mad and needed it. He stated that Lieutenant Dudley made him angry because he ignored him, so Appellant attacked him. Further, Appellant laughed after he beat Lieutenant Dudley with the fan motor and had no remorse for his conduct.

Finally, Appellant has an extensive criminal history that is replete with violent behavior, most of which was directed at law enforcement or correctional officers: as we have noted, at sixteen he was adjudicated by a juvenile court for (1) three counts of assault of a public servant, (2) possession of a prohibited item in a correctional facility, (3) taking a weapon from an employee of a correctional facility, and (4) retaliation. When he was seventeen, and before his assault on Lieutenant Dudley, he committed the offense of harassment of a public servant. After he assaulted Lieutenant Dudley, Appellant again committed the offense of harassment of a public servant. Appellant's assault of Lieutenant Dudley, in which he inflicted severe and permanent harm to him, is part of a larger, consistent pattern of violent conduct by

8

Appellant for which he has shown no remorse nor a willingness to reform. *See, e.g.*, *Cross v. State*, 729 S.W.3d 537, 557 (Tex. App.—Eastland 2026, pet. ref'd) (holding appellant's extensive criminal history that included four prior felony convictions did not support an inference of disproportionality of a life sentence for a first-degree felony offense).

Based on the threshold factors that we must consider—the harm caused to Lieutenant Dudley, Appellant's culpability for the charged offense, and Appellant's extensive criminal history—we conclude that Appellant's sentence of life imprisonment for Count One, which is within the applicable statutory range of punishment for his conviction and carries with it the possibility of parole, does not give rise to an inference of disproportionality. *See* PENAL §§ 12.32(a), 12.42(c)(1); *Cross*, 729 S.W.3d at 557; *see also Guillory*, 652 S.W.3d at 930–31 (the sentence of twenty years' imprisonment imposed by the trial court for the offense of aggravated assault was not excessive or violative of the Eighth Amendment); *Starling v. State*, No. 11-22-00128-CR, 2023 WL 8631446, at *3 (Tex. App.—Eastland Dec. 14, 2023, no pet.) (mem. op., not designated for publication) (sentence of life imprisonment did not violate the Eighth Amendment); *Amparan v. State*, No. 11-21-00162-CR, 2022 WL 17684377, at *3 (Tex. App.—Eastland Dec. 15, 2022, no pet.) (mem. op., not designated for publication) (same); *Robles v. State*, No. 11-20-00174-CR, 2022 WL 1497354, at *2–3, *5–6 (Tex. App.—Eastland May 12, 2022, no pet.) (mem. op., not designated for publication) (upholding the sentence of twenty years' imprisonment for aggravated assault with a deadly weapon by a seventeen-year-old defendant with no criminal history that caused serious permanent injuries to the victim: "Although [the appellant] was a young man at the time . . . [b]y all accounts, [the appellant] committed a serious offense—the gravity of his conduct was significant and its effect on [the victim] irreparable."). Therefore, we cannot say that

the trial court either abused its discretion or violated Appellant's Eighth Amendment rights when it sentenced him to life imprisonment for Count One.

Accordingly, we overrule Appellant's first issue.

B. *Count One: The Trial Court's Enhancement Finding*

In the State's first cross-point, which Appellant joins in the alternative if we affirm the trial court's judgment for Count One, which we do, the parties request that we modify the trial court's judgment for Count One to delete the trial court's enhancement finding of "true." The record shows that, although Appellant pled "not true" to the enhancement allegation, the trial court did not make an express finding for any enhancement allegation on the record.[5] Neither party objected to this omission.

"A trial court makes an implied finding of true to an enhancement allegation when the record establishes the truth of that allegation." *Torres v. State*, 391 S.W.3d 179, 183 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *McCoy v. State*, No. 11-13-00099-CR, 2015 WL 1756768, at *4 (Tex. App.—Eastland Apr. 16, 2015, pet. ref'd) (mem. op., not designated for publication). When, as here, the trial court imposes the defendant's punishment, the trial court should state on the record its findings on the State's enhancement paragraphs; however, the trial court does not err if it fails to do so, when it instead memorializes its finding(s) in its written judgment. *See Fountain v. State*, 604 S.W.3d 578, 580 n.1 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Seeker v. State*, 186 S.W.3d 36, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("Although it is preferred that trial courts read the enhancement paragraphs orally and find them to be true or not true on the record, a

---

[5]The indictment does not contain any enhancement allegations. However, the reporter's record indicates that the State filed a notice of enhancement, and the State read the enhancement allegations in open court during the punishment phase, for which Appellant pled "not true" to each allegation.

trial court does not err by not doing so."); *Patterson v. State*, No. 02-22-00268-CR, 2024 WL 1451989, at \*2 (Tex. App.—Fort Worth Apr. 4, 2024, pet. ref'd) (mem. op., not designated for publication) (collecting cases); *Harrison v. State*, No. 10-07-00253-CR, 2009 WL 1579002, at \*1 (Tex. App.—Waco June 3, 2009, pet. ref'd) (mem. op., not designated for publication).

In this case, the State offered, and the trial court admitted, a penitentiary packet that identified Appellant's prior convictions with which the State sought to enhance his punishment: the felony offenses of possessing a prohibited item in a correctional facility, retaliation, and assault of a public servant. PENAL §§ 22.01(b)(1), 36.06(c), 38.11(g). According to certified copies of the transfer orders in the penitentiary packet, Appellant was committed to the Texas Juvenile Justice Department (TJJD) for these felony offenses and subsequently transferred to TDCJ. FAM. § 51.13(d) (West 2022) (an adjudication for a felony offense that results in the juvenile's commitment to TJJD is a final felony conviction for purposes of Section 12.42(a)–(c)(1)); PENAL § 12.42(f) (same). The State also presented testimony from a fingerprint expert that linked Appellant to the documents in the penitentiary packet. Therefore, because the record establishes the truth of at least one of Appellant's prior felony convictions that was alleged for enhancement purposes, the trial court, after considering the evidence presented, did not err when it failed to orally pronounce that it found the State's enhancement paragraph to be "true." *Seeker*, 186 S.W.3d at 39; *McCoy*, 2015 WL 1756768, at \*4; *Harrison*, 2009 WL 1579002, at \*1. Consequently, we will not modify the trial court's judgment to delete its finding that the State's enhancement paragraph was "true." *Fountain*, 604 S.W.3d at 581 n.1; *Seeker*, 186 S.W.3d at 39.

Accordingly, the State's first cross-point is overruled.

11

C. *Count Two: Life Imprisonment is an Illegal Sentence for Count Two*

In its second cross-point, which Appellant also joins, the parties assert that the trial court's sentence of life imprisonment for Count Two is an illegal sentence and, because it is, the sentence must be reversed and a new punishment trial for Count Two must be ordered.

"An illegal sentence is one that is not authorized by law; therefore, a sentence that is outside the range of punishment authorized by law is . . . illegal." *Galindo v. State*, 698 S.W.3d 111, 116 (Tex. App.—Eastland 2024, no pet.) (quoting *Ex parte Parrott*, 396 S.W.3d 531, 534 (Tex. Crim. App. 2013)). Further, unauthorized punishment is void. *See Ex parte Johnson*, 697 S.W.2d 605, 606–07 (Tex. Crim. App. 1985); *see also Ex parte Seidel*, 39 S.W.3d 221, 225 n.4 (Tex. Crim. App. 2001). For Count Two, Appellant was convicted of possession of a deadly weapon while incarcerated in a penal institution, a third-degree felony. PENAL § 46.10(a)(2), (d). The statutory punishment range for a third-degree felony offense is imprisonment for no less than two years, but no more than ten years. PENAL § 12.34. Given that Appellant's punishment was enhanced with one prior felony conviction, the punishment range for the convicted offense would be increased to a second-degree felony—imprisonment for no less than two years, but no more than twenty years. *Id.* §§ 12.33, 12.42(a). Here, because the sentence of life imprisonment assessed by the trial court for Count Two exceeds the permissible range of punishment for the convicted offense, the imposed sentence is illegal, void, and must be reversed. *See Gonzalez v. State*, 187 S.W.3d 166, 172 (Tex. App.—Waco 2006, no pet.) (a sentence outside statutory range of punishment is a void illegal sentence) (citing *Mizell v. State*, 119 S.W.3d 804, 805 & n.7 (Tex. Crim. App. 2003)).

Accordingly, the State's second cross-point is sustained.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court for Count One. We affirm the trial court's judgment as to Appellant's conviction for Count Two, but we reverse its judgment insofar as it imposes a sentence of life imprisonment, and we remand Count Two to the trial court for a new punishment trial. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West 2018).

W. STACY TROTTER
JUSTICE

June 11, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

13